# Exhibit 1



**JWG / ALL**
**Transmittal Number: 20100461**
**Date Processed: 07/17/2019**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Nicole Brackett<br>Envision Healthcare<br>1A Burton Hills Blvd<br>Nashville, TN 37215-6187 |
| **Electronic copy provided to:** | Norvis Esponda<br>Nicole Brackett<br>Deserae Gordon<br>Marc Bonora<br>Rich Moore<br>Caron Hodnett<br>Michelle Sanderson<br>Lynne Liko |

| | |
|---|---|
| **Entity:** | Affilion, LLC<br>Entity ID Number  3227324 |
| **Entity Served:** | Affilion, LLC |
| **Title of Action:** | Benjamin Armijo vs. Affilion, LLC |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Santa Fe County District Court, NM |
| **Case/Reference No:** | D-101-CV-2019-01804 |
| **Jurisdiction Served:** | New Mexico |
| **Date Served on CSC:** | 07/16/2019 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Jack E. McGehee<br>713-864-4000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



### McGEHEE ★
### CHANG
### LANDGRAF
TRIAL LAWYERS

**...k E. McGehee**
Certified by Texas Board of Legal
Specialization - Pesonal Injury Trial Law
National Board of Trial Advocacy
Civil Trial Advocate
American Board of Professional
Liability Attorneys - Diplomate
Licensed in Texas, New York,
New Mexico and Oregon

**H. C. Chang**
Licensed in Texas and New Mexico

**Benjamin T. Landgraf**
Licensed in Texas and New Mexico

**P. Diane McGehee**
Licensed in Texas and Minnesota

**Benjamin C. Feiler**
Licensed in Texas

July 11, 2019

Affilion, LLC
Corporation Service Company
123 East Marcy Street, Suite 101
Santa Fe, NM 87501

Re:    Case No: Case No: D-101-CV-2019-01804; *Benjamin Armijo, on behalf of himself and all other similarly situated v. Affilion, LLC, Affilion Physicians Management Inc., d/b/a Affilion, Inc., EmCare, Inc., EmCare Holdings, Inc., Envision Healthcare Holdings, Inc., and Envision Healthcare Corporation*; in the First Judicial District Court of Santa Fe County, New Mexico.

TO:    Defendant Affilion, LLC.

A lawsuit has been filed against Affilion, LLC as referenced in the caption above, relating to the billing of medical care and treatment provided to Plaintiff and other persons in the state of New Mexico. As a direct and proximate result of the negligent acts and omissions, carelessness, and negligent and wrongful conduct of Defendants, Plaintiffs and other people in New Mexico suffered injuries and damages.

Enclosed please find the following materials for this case:

1) Civil Summons;
2) Plaintiff's Complaint;
3) Plaintiff's Demand for a Six Person Jury;
4) Affidavit of Non-Admitted Lawyer;
5) Plaintiff's First Requests for Production to Affilion, LLC;
6) Plaintiff's First Interrogatories to Affilion, LLC;
7) Plaintiff's First Requests for Admission to Affilion, LLC; and
8) Plaintiff's Notice of Oral Deposition of John Butcher, MD.

You should immediately notify your applicable insurance carrier and instruct your carrier to maintain adequate reserve for this case.

Please call me at your earliest convenience to discuss this case.

Sincerely,

*Jack McGehee*

Jack E. McGehee

Enclosures; as stated.

### ★Accepting Cases Throughout the United States★

10370 Richmond Avenue, Ste. 1300
Houston, TX 77042
Tel: 713-864-4000 • Fax: 713-868-9393
Email: txlaw@lawtx.com • http://www.lawtx.com

**4-206. Summons.**
[For use with District Court Civil Rule 1-004 NMRA]

| SUMMONS | |
|---|---|
| District Court: _1st Judicial_<br>Santa Fe_____County, New Mexico<br>Court Address: P.O. Box 2268<br>225 Montezuma, Ave.<br>Santa Fe, New Mexico 87504/87501<br>Court Telephone No.: 505-455-8250 | Case Number:<br>D-101-CV-2019-01804<br><br>Judge:<br><br>Case assigned to Wilson, Matthew Justin |
| Plaintiff(s): Benjamin Armijo, et al.<br>v.<br>Defendant(s):AFFILION, LLC; AFFILION PHYSICIANS MANAGEMENT, INC, D/B/A AFFILION, INC; EMCARE, INC., et al. | Defendant Affilion , LLC<br>Name: Corporation Service Company<br>Address: 123 East Marcy Street, Suite 101<br>Santa Fe, NM 87501 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

1. A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.
2. You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA.) The Court's address is listed above.
3. You must file (in person or by mail) your written response with the Court. When you fileyour response, you must give or mail a copy to the person who signed the lawsuit.
4. If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.
5. You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.
6. If you need an interpreter, you must ask for one in writing.
7. You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at ____Santa Fe_____,New Mexico, this _09_ day of _July_____, 2019_ .

STEPHEN T. PACHECO
CLERK OF COURT

By: _Jorge Montes_
       Deputy

Attorney for Plaintiff or Plaintiff pro se
Name:
Address:
Telephone No.:
Fax No.:
Email Address:

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 NMRA OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

## RETURN[1]

STATE OF NEW MEXICO )
                  )ss
COUNTY OF _____ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _____ county on the _____ day of _____, _____, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ] to the defendant _____ *(used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint)*

[ ]    to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA *(used when service is by mail or commercial courier service)*.

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ] to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, *(used when the defendant is not presently at place of abode)* and by mailing by first class mail to the defendant at _____ *(insert defendant's last known mailing address)* a copy of the summons and complaint.

[ ] to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ *(insert defendant's business address)* and by mailing the summons and complaint by first class mail to the defendant at _____ *(insert defendant's last known mailing address)*.

[ ] to _____, an agent authorized to receive service of process for defendant _____.

[ ] to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ *(used when defendant is a minor or an incompetent person)*.
[ ] to _____ *(name of person)*, _____, *(title of person authorized to receive service. Use this alternative when the defendant is a corporation or*

*an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision).*

Fees: _____

_____
Signature of person making service
_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____[2]

_____
Judge, notary or other officer authorized
to administer oaths

_____
Official title

## USE NOTE

     1.     Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

     2.     If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order No. 05-8300-001, effective March 1, 2005; by Supreme Court Order No. 07-8300-016, effective August 1, 2007; as amended by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013; as amended by Supreme Court Order No. 13-8300-022, effective for all cases pending or filed on or after December 31, 2013.]

FILED
1st JUDICIAL DISTRICT COURT
Santa Fe County
7/9/2019 2:01 PM
STEPHEN T. PACHECO
CLERK OF THE COURT
Jorge Montes

**STATE OF NEW MEXICO**
**SANTA FE COUNTY**
**FIRST JUDICIAL DISTRICT COURT**

**BENJAMIN ARMIJO, on behalf of himself**
**And all others similarly situated;**

    *Plaintiff,*

v.

**Case No:** D-101-CV-2019-01804

Case assigned to Wilson, Matthew Justin

**AFFILION, LLC; AFFILION PHYSICIANS**
**MANAGEMENT, INC, D/B/A AFFILION, INC;**
**EMCARE, INC.; EMCARE HOLDINGS, INC.;**
**ENVISION HEALTHCARE CORPORATION;**
**AND ENVISION HEALTHCARE HOLDINGS,**
**INC.**

    *Defendants.*

## COMPLAINT

    Plaintiff Benjamin Armijo ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys McGEHEE ★ CHANG, LANDGRAF, files this Complaint against Defendants Affilion, LLC, Affilion Physicians Management Inc., d/b/a Affilion, Inc., EmCare, Inc., EmCare Holdings, Inc., Envision Healthcare Holdings, Inc., and Envision Healthcare Corporation (collectively "Defendants"), and hereby alleges as follows:

### I

### OVERVIEW

    1.    Health care in the United States has a self-inflicted bad reputation.  It is financially the worst among all 1st world countries.  The cost is out of control.  Profiteers rule.  Not the doctors or those who toil at the bedside of the sick and dying.  They too are victims alongside the patients they treat.  Giant corporations rule.  They are held at bay only by other giant corporations.  The market place is normalized by negotiations between the giants.  But the atrocity occurs when the

giants want more. They are not satisfied charging usual and customary costs. They want many, many times more. How do they get more? They gouge. They can't gouge when other giants sit at the negotiation table. They can't gouge Medicare, Medicaid, or major private insurers. Instead, they gouge you and me. They collect the usual and customary costs from their giant equals, then gouge the patient with the balance.

2.      Bills from such profiteers have real effects on real people – the patients who receive such care. These real people are mothers, fathers, and children. The patient doesn't see an unreasonable bill coming, cannot prevent it and is surprised to learn about it. All of a sudden, when the medical event passes, and they thought they were covered, bam. The next event is sometimes as life changing as the medical event. They are gouged. They are billed hundreds of percentage points higher than the usual and customary costs—by the profiteers. This lawsuit is against such profiteers.

3.      The most conservative estimates, including those from the Center for Disease Control, Harvard University, and U.S. Bankruptcy Courts, tell the story:

- 56 million Americans under age 65 will have trouble paying medical bills;

- Over 35 million American adults (ages 19-64) will be contacted by collections agencies for unpaid medical bills;

- Nearly 17 million American adults (ages 19-64) will receive a lower credit rating on account of their high medical bills;

- Over 15 million American adults (ages 19-64) will use up all their savings to pay medical bills;

- Over 11 million American adults (ages 19-64) will take on credit card debt to pay off their hospital bills;

- Nearly 10 million American adults (ages 19-64) will be unable to pay for basic necessities like rent, food, and heat due to their medical bills;

- Over 16 million children live in households struggling with medical bills;

- Despite having year-round insurance coverage, 10 million insured Americans (ages 19-64) will face bills they are unable to pay;

- 1.7 million Americans live in households that will declare bankruptcy due to their inability to pay their medical bills;

- Three in five bankruptcies annually (approximately 643,000 bankruptcies) are due to medical bills. The vast majority of these bankruptcies occur despite health insurance, and with the Affordable Care Act in serious jeopardy if not already overturned, these numbers will not likely change.

4.      Undebatable in the analysis of high medical bills is this: it is always wrong to overcharge for services. This is particularly so when such services are medical services provided at the most vulnerable times of our lives – when we are ill or in need of emergent care. That is when we expect medical care that is not only good, but also expect medical care that is billed at usual and customary rates – reasonable rates. Just because a patient has surprise (unexpected) doctors or other healthcare professionals caring for them does not mean that billing such a patient for excessive amounts is somehow justified. The exact opposite is true: usual and customary billing practices are expected regardless of the circumstances that initiate care of a patient, and regardless of who cares for the patient. To bill a patient otherwise is simply gouging.

5.      Yet such behavior – presenting after the fact excessive medical bills to patients – is exactly what Defendants have and continue to do. And their business plan makes sure of that. They set up a business structure to get away with gouging. Despite the very real effects that are seen from medical bills described above. And despite objective evidence of what constitutes usual and customary fees. Defendants ignore objective marketplace data and fee structure analysis from private and public academic institutions, major insurance carriers, state governments, and the Federal government. Defendants know what they should charge, but have instead charged patients far more (in just one example, rates 600% (six times) the government-set usual and customary rate

was demanded by Defendants). Data from at least one major insurance company indicates that similar Defendants charge on average 975% of Medicare for their services.

6.      The effect of Defendants' egregious billing practices is significant as ER visits continue to be one of the largest drivers of our country's spending on outpatient care and one of the biggest sources of financial surprises for consumers nationwide. In fact, from 2012 to 2016 there was a 34% increase in per-person spending for ER services in the United States.

7.      Thus, together, Defendants, by both their business practices and by their business entity structure, price gouge and continue to do so by billing Plaintiff and the Class unreasonable and excessive fees for medical services. Plaintiff and the Class seek remedies for such unlawful and illegal practice.

## II

## PARTIES

8.      Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

9.      Plaintiff Benjamin Armijo, individually and as class representative, is a resident of Dona Ana County, New Mexico. Plaintiff was subjected to wrongful excessive and unreasonable medical billing – gouging – by Defendants at all times material to this Complaint.

10.     Defendant Affilion, LLC is a New Mexico Domestic Limited Liability Company that supplies medical services and providers, including emergency department physicians, to New Mexico hospitals and healthcare entities.

11.     Defendant Affilion, LLC can be served with process through its registered agent Corporation Service Company, 123 East Marcy Street, Suite 101, Santa Fe, NM 87501.

12.     Defendant Affilion Physicians Management Inc., d/b/a Affilion, Inc. is a Foreign Profit Corporation that supplies medical services and providers, including emergency department physicians, to New Mexico hospitals and healthcare entities.

13.     Defendant Affilion Inc. can be served through its registered agent Incorp Services, Inc. at 1012 Marques PL. Ste 106B, Santa Fe, NM 87505.

14.     Affilion, LLC employs a practice of billing emergency room patients in New Mexico for medical services at inflated rates that are in excess of negotiated rates and that are not reasonable, usual and customary.

15.     Defendant Affilion, LLC is an affiliate, subsidiary, or is otherwise related to, subservient to, or controlled by Defendants Affilion, Inc., EmCare, Inc., EmCare Holdings, Inc., Envision Healthcare Holdings, Inc. and Envision Healthcare Corporation.

16.     Defendant Affilion, LLC assigns and/or otherwise transfers billing and revenue rights for medical services provided by Affilion, LLC to Defendants Affilion, Inc., EmCare, Inc., EmCare Holdings, Inc., Envision Healthcare Holdings, Inc. and Envision Healthcare Corporation who then bill and/or receive all or portions of such revenue streams.

17.     Defendant Affilion, Inc. employs a practice of billing emergency room patients in New Mexico for medical services at inflated rates that are in excess of negotiated rates and that are not reasonable, usual and customary.

18.     Defendant Affilion, Inc is an affiliate, subsidiary, or is otherwise related to, subservient to, or controlled by Defendants Affilion, LLC, EmCare, Inc., EmCare Holdings, Inc., Envision Healthcare Holdings, Inc. and Envision Healthcare Corporation.

19.     Defendant Affilion, Inc. assigns and/or otherwise transfers billing and revenue rights for medical services provided by Affilion, Inc. to Defendants Affilion, LLC, EmCare, Inc.,

EmCare Holdings, Inc., Envision Healthcare Holdings, Inc. and Envision Healthcare Corporation who then bill and/or receive all or portions of such revenue streams.

20.    Defendant EmCare, Inc. (hereinafter "EmCare") is a Texas corporation with its corporate headquarters in Dallas, Texas.  Upon information and belief, EmCare does business in New Mexico as well as 38 other states.  EmCare provides, among other things, outsourced facility-based physician and healthcare personnel staffing services in multiple areas of medicine including emergency medicine, hospital medicine (e.g. "hospitalists"), acute care surgery, anesthesiology, and radiology/teleradiology.   EmCare provides these services via wholly subservient and controlled regional and local business entities, like Affilion, LLC and Affilion, Inc. – shell entities.

21.    Defendant EmCare Holdings, Inc., (hereafter "ECHI") is a Texas corporation with its corporate headquarters in Dallas, Texas.  Upon information and belief, ECHI is the parent and alter ego of Defendant EmCare.  ECHI provides outsourced facility-based physician services. It offers services in the areas of emergency medicine, hospital medicine, acute care surgery, anesthesiology, and radiology/teleradiology. The company also provides physician services, including practice leadership, physician/clinician recruiting and retention, clinician credentialing, clinician scheduling, clinical education programs, and billing and reimbursement services, as well as consultation on a myriad of topics addressing clinical, administrative, management, performance improvement, and patient experience issues. It serves hospitals, health systems, rural hospitals, ambulatory care centers, physicians, and other healthcare clients in New Mexico and many other states.

22.    Defendant Envision Healthcare Holdings, Inc. (hereafter "EHHI") is a Colorado corporation with its corporate headquarters in Greenwood Village, Colorado.  Upon information and belief, EHHI is the parent company of and alter ego of Defendants EmCare and ECHI.  EHHI

provides physician-led outsourced medical services to consumers, hospitals, healthcare systems, health plans, and government entities in the United States. It offers a range of hospital-based physician staffing and related management services, including contract management, staffing, recruiting, scheduling, operational improvement assessment, practice support, and practice improvement services for emergency departments, anesthesiology, hospitalist/inpatient care, radiology, tele-radiology, and surgery programs; and physician-led care management solutions to patients outside the hospital. The company also provides community based medical transportation services, such as emergency response services; non-emergency medical transportation services, such as critical care transfers, and wheelchair and other inter-facility transport services; and other services comprising managed transportation, dispatch, event medical, paramedic training, fixed-wing air ambulance, and onsite and offshore emergency medical services. It markets its services primarily under the EmCare and AMR brands.

23.     Defendant Envision Healthcare Corporation (also known as Envision Healthcare, Inc. and at times hereafter referred to as "EHC") is a Colorado corporation with its corporate headquarters in Greenwood Village, Colorado.  Upon information and belief, EHC is the parent company of and alter ego of Defendants EmCare, ECHI, and EHHI.  EHC provides physician-led outsourced medical services to consumers, hospitals, healthcare systems, health plans, and government entities in the United States. It offers a range of hospital-based physician staffing and related management services, including contract management, staffing, recruiting, scheduling, operational improvement assessment, practice support, and practice improvement services for emergency departments, anesthesiology, hospitalist/inpatient care, radiology, tele-radiology, and surgery programs; and physician-led care management solutions to patients outside the hospital. The company also provides community based medical transportation services, such as emergency

response services; non-emergency medical transportation services, such as critical care transfers, and wheelchair and other inter-facility transport services; and other services comprising managed transportation, dispatch, event medical, paramedic training, fixed-wing air ambulance, and onsite and offshore emergency medical services. It markets its services primarily under the EmCare and AMR brands.

24.     Upon information and belief, Defendants Envision Healthcare Corporation and Envision Healthcare Holdings, Inc., through several wholly-owned intermediate subsidiaries, own all of the stock of EmCare Holdings, Inc., and in turn EmCare Holdings, Inc. owns all of the stock in EmCare, Inc., and in turn EmCare, Inc. owns all of the stock of a myriad of local and regional downstream companies that continue to the local-hospital level.

25.     Upon information and belief, Envision Healthcare Corporation and Envision Healthcare Holdings, Inc., and their subordinate companies, ECHI, and EmCare have a commonality of officers and directors, and are thus alter egos of one another.

26.     Moreover, EmCare, ECHI, EHHI, and EHC not only share officers and directors, but they also share office space – EmCare and its subordinates, and ECHI, are commonly located at 13737 Noel Road, Suite 1600, Dallas Texas.  Envision Healthcare Corporation and EHHI are commonly located at 6200 S. Syracuse Way, Suite 200, Greenwood Village, Colorado 80111.

27.     EmCare, ECHI, EHC, and EHHI are engaged in the same business as described in paragraphs 2-4 above.  For example, EmCare is engaged in the same business as its parents ECHI and EHHI, and ECHI is engaged in the same business as EHHI and EHC.

28.     Emcare, ECHI, EHC, and EHHI have not observed the corporate formalities required for keeping themselves separate insofar as their actions, inactions, and liability is concerned – in fact, the distinctions between these Defendants was and remains blurred to the

extent that it is clear that EmCare is merely an instrument of its corporate parents, ECHI, EHC, and EHHI, and that all four entities are merely one common instrument of business.

## III

## JURISDICTION & VENUE

29.     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

30.     Personal jurisdiction over Defendants in this matter arises because they have purposefully availed themselves of this forum through their business activities in New Mexico.

31.     This Court has jurisdiction over the parties and claims in this case and this Court is a proper venue for this case because Defendant Affilion, LLC is a New Mexico Domestic Limited Liability Company.

32.     Defendant Affilion, LLC maintains a statutory registered agent capable of receiving service of process in Santa Fe County, New Mexico.

33.     Defendant Affilion, Inc. maintains a statutory registered agent capable of receiving service of process in Santa Fe County, New Mexico

34.     Since Defendant Affilion, LLC is a New Mexico Domestic Limited Liability Company, Affilion, LLC and Affilion, Inc. both maintain statutory registered agents capable of receiving service of process in Santa Fe County, New Mexico, and Plaintiff is a resident of New Mexico, there is incomplete diversity of Defendants from Plaintiff, and thus this Court and not Federal Court has proper jurisdiction over this matter.

35.     This Court is a proper venue pursuant to NMSA 38-3-1 (A) and (F) because Defendants conduct business in Dona Ana County, New Mexico and/or Plaintiff is a resident of Dona Ana County, New Mexico.

IV

**SUMMARY OF CASE**

36.     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

37.     This class action concerns a systematic and planned scheme by Defendants to take advantage of those in need of medical care, those who are most vulnerable.  Together, Defendants structured their business enterprises and formed "outsource provider" relationships with hospitals and other medical facilities in order to gouge those in need by foisting unreasonable and excessive fees on such patients. As Defendants' scheme often involved and involves healthcare providers that medical patients cannot pick and choose prospectively, and often involved and involves healthcare providers in emergency (critical life and death) situations, such medical patients had no choice in who cared for them.  And because not only do such patients lack the bargaining power of health insurance companies, big businesses, and the government, but also such ill and critically ill patients are in no position whatsoever to bargain even if they could, Defendants took advantage of this "no choice" situation.

38.     Bills for services, particularly surprise bills, are always wrong when such bills are gouging – unreasonable and excessive – and therefore not usual and customary.

39.     This is a consumer class action lawsuit involving such gouging of medical costs.  It is brought by Plaintiff, individually and on behalf of other similarly situated persons (i.e. class members), who were billed for, and/or paid monies based upon, objectively unreasonable and excessive rates above the usual and customary fees for similar medical services.

40.     Plaintiff and Class members were billed excessive fees after the fact, in a surprise fashion, by Defendants.  In other words, Plaintiff and class members were presented with bills for excessive fees through no fault of their own.

41.     Unlike sophisticated and powerful corporate, business and government entities, Plaintiff and Class members lack meaningful negotiating power regarding such excessive fees.

42.     Plaintiff and Class members are required to pay amounts determined by Defendants. The amount billed, charged, and/or paid to Defendants is objectively unreasonable and at excessive rates above the usual and customary fees for similar medical services given Plaintiff and Class members limited negotiating power.

43.     As a result of Defendants' failure to utilize reasonable fee structures when billing Plaintiffs and Class members, Plaintiff alleges price gouging and seeks actual and punitive damages, as well as a permanent injunction to prevent Defendants from further damaging Plaintiff and all putative Class members, as further set forth herein.

V

**FACTS COMMON TO ALL COUNTS**

44.     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

45.     Plaintiff and Class allegedly received medical services from Defendants.

46.     Plaintiff and Class were billed by Defendants for such medical services.

47.     The amounts billed by Defendants were unreasonable and excessive; in other words, the amounts billed exceeded the usual and customary fees for such services.

48.     Plaintiff was presented with such unreasonable, excessive and gouging fees only after the fact – the definition of "surprise" billing.

49.     Plaintiff had no way and no power to pre-negotiate reasonable and thus lower fees.

50.     Defendants have ignored objective market data from a variety of sources including private and academic institutions, major insurance companies, state governments, and the Federal government, when failing to conform such bills to usual and customary fees.

51.     Defendants have in fact intentionally constructed a business structure to maximize wrongful, unreasonable, and excessive fees.

## VI

## **INDIVIDUAL FACTS**

52.     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

53.     Plaintiff Benjamin Armijo was a patient at MountainView Regional Medical Center on and during July 27, 2017.

54.     As part of his care at MountainView Regional Medical Center, Plaintiff allegedly received medical care by outsourced healthcare providers who were employees, contractors, representatives, agents, apparent agents, ostensible agents or who were otherwise related to Defendants.

55.     Plaintiff was billed 988.00 by Defendants for such medical services.

56.     The amounts billed by Defendants were unreasonable and excessive; the fees exceeded the usual and customary fees for such services.

57.     Plaintiff was presented with such unreasonable, excessive and gouging fees only after the fact – the definition of "surprise" billing.

58.     Plaintiff had no way and no power to pre-negotiate lower and reasonable fees.

59.     Defendants have taken no corrective measures to conform such bills to usual and customary fees.

## VII

## CLASS ALLEGATIONS

60.     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

61.     Plaintiff brings this action pursuant to the common law claims asserted herein, including but not limited to negligence, breach of implied contract, price gouging, balanced billing, surprise billing, and other similar claims and causes of action,  on behalf of himself and all those similarly situated (the Class).

62.     **The Class**: Plaintiff brings this action on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All individuals who were sent medical bills by Defendants (including but not limited to Defendants and any of Defendants' affiliates, subsidiaries, parents, successors, predecessors, employees, contractors, agents, representatives, or assigns) within the past 6 years for amounts that exceed the highest in-network amount paid by major private health insurance plans for such services.

63.     Because Defendants' actions are ongoing, there is no closing date for this proposed Class.

64.     Excluded from the Class is (1) any judge presiding over this action and family members of such a judge; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and the current or former employees, officers, and directors of same; (3) persons who properly execute and file a timely request for exclusion from the Class; and (4) the legal representatives, successors,

or assigns of any such excluded persons, as well as any individual who contributed to the presentation to Plaintiff or the Class of the fees billed by Defendants.

65.     **Numerosity**: Members of the Class are so numerous that their individual joinder herein is impracticable.  Although the exact number of Class members and their addresses are unknown to Plaintiff, they and the amount of their damages are readily ascertainable on a ministerial basis from Defendants' records.  Upon information and belief, including publications from Defendants, there are at least 15 million patient encounters with Defendants annually, and thus the total Class numbers are well in the millions.  Class members may be notified of the pendency of this action by mail and/or electronic mail, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

66.     **Typicality**: Plaintiff's claims are typical of the Class because Plaintiff and the Class sustained the same type of injury as a result of Defendants' uniform wrongful conduct of unreasonable and excessive billing during transactions with Plaintiffs and the Class.  There is nothing extraordinary or unusual about Plaintiff being excessively billed – unreasonable and excessive billing is the common nucleus – the modus operandi – of Defendants for all who receive or are alleged to receive medical services by Defendants.  The defenses to such a modus operandi are also the same as to every member of the Class: Defendants can <u>only</u> defend by showing that such bills were indeed reasonable.

67.     **Adequacy**: Plaintiff is an adequate representative of the Class because his interests are the same as – they do no conflict with – the interests of the members of the Class he seeks to represent.  Plaintiff represents the very kind of person that is abused and injured by Defendants' unreasonable billing scheme.  Plaintiff has retained counsel competent and experienced in class

action litigation, and Plaintiff intends to prosecute this case vigorously. The interests of members of the Class will be treated fairly and will be adequately protected by Plaintiff and his counsel.

68.     **Predominance, Superiority and Manageability**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct and Defendants' complicated business scheme created as part of that wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

69.     **Commonality**: Common questions of law and fact exist as to Plaintiff and all members of the Class and predominate over any questions affecting only individual Class members, and include, but are not limited to:

    a.   Whether Defendants actually provided the medical services that were billed;

    b.   Whether the billed amounts exceeded the usual and customary cost of similar services;

c.   Whether the billed amounts exceeded the maximum amount paid by major health insurance carriers for the same or similar medical services at in network rates;

d.   Whether Defendants billed for medical services at unreasonable and excessive rates;

e.   Whether Defendants created and/or participated in a complicated alter-ego business structure to bill for medical services at unreasonable and excessive rates;

f.   Whether Defendants were intentional in billing for medical services at unreasonable and excessive rates;

g.   Whether Defendants took reasonable steps and measures to ensure that bills for medical services were not unreasonable and/or excessive;

h.   Whether Defendants notified Plaintiff and the Class members that the billed rates for medical services were unreasonable and/or excessive; and

i.   Whether and to what extent Plaintiff and the Class have sustained damages.

70.     Plaintiff reserves the right to revise Class definitions and questions based upon facts learned in discovery.

## VIII

## CAUSES OF ACTION

A.     **Count 1 – Negligence.**

71.     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

72.     Defendants had a duty to provide the actual medical services that were billed.

73.     Defendants also had a duty to exercise reasonable care in order to bill Plaintiff and the Class only for reasonable, usual and customary fees for medical services actually provided. Defendants' duty arose from the alleged medical care rendered to Plaintiff and the Class.

74.     Defendants also had a duty to have procedures in place to ascertain reasonable, usual and customary fees for medical services.

75.     The resulting injury to Plaintiff and the Class as a result of Defendants' billing unreasonable, excessive and gouging fees was reasonably foreseeable, particularly in light of Defendants' intentional actions to create a complicated business entity structure to undertake such unreasonable and excessive billing practices.

76.     Defendants, through their actions and/or omissions, unlawfully breached their duties to Plaintiff by failing to exercise reasonable care in billing Plaintiff and the Class reasonable and customary amounts for medical services.

77.     But for Defendants' breach of their duties, Plaintiff and the Class would not be injured by receiving unreasonable and excessive bills for medical services.

78.     Defendants failure to exercise reasonable care, and thus breach of their duties, was the proximate cause of the monetary and other injuries sustained by Plaintiff and the Class.

79.     Defendants intended, knew, were substantially aware, should have known, acted in callous and reckless disregard, and/or were consciously indifferent to the obvious yet extreme harm that Plaintiffs and the Class would suffer if Defendants billed for excessive and unreasonable fees for medical services.  As a result, Plaintiff and the Class have been further harmed and/or injured.

**B.      Count 2 – Breach of Implied Contract.**

80.     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

81.     Plaintiff and the Class sought medical services in general; Plaintiff specifically did not choose his medical provider by name and specifically did not choose any Defendants.

82.     Defendants provided medical services to Plaintiff and the Class.

83.     Defendants did not obtain a written contract to perform such services.

84.     Defendants did not obtain an oral contract to perform such services.

85.     The actions and conduct of Plaintiff, the Class and Defendants created an implied contract.

86.     Plaintiff and the Class, and Defendants, had a mutual understanding that medical services would be provided for a usual and customary fee.

87.     No actual fee ("price") was discussed with Plaintiff and the Class, no documents discussing actual fees were proffered to Plaintiff and the Class, and no reference was made to Plaintiff and the Class regarding obtaining a fee schedule (or "prices") prior to or during Defendants' provision of medical services.

88.     Fundamental contract law requires insertion of a usual and customary fee or "price" for such medical services as there was no actual fee or "price" schedule or reference in the implied contract.

89.     Plaintiff and the Class were justified in understanding that a reasonable and customary fee would be charged by Defendants.

90.     Defendants' fees far exceeded the usual and customary fees charged for the same or similar medical services and were thus unreasonable.

91.     Defendants claimed exorbitant and unreasonable fees were owed for services rendered to Plaintiff and the Class.

92.     Defendants' exorbitant and unreasonable fees and resulting claim(s) based on such fees were a breach of implied contract which damaged Plaintiff and the Class either by unjust monies paid to Defendants, damage to Plaintiff's and the Class' credit rating and financial

balance/net worth (Defendants' claim(s) were financial liabilities regardless of whether or not Plaintiff and the Class paid), or both.

93.     Defendants' exorbitant and unreasonable fees and resulting claim(s) based on such fees claim(s) breached the implied covenant of good faith and fair dealing which damaged Plaintiff and the Class either by unjust monies paid to Defendants, damage to Plaintiff's and the Class' credit rating and financial balance/net worth (Defendants' claim(s) were financial liabilities regardless of whether or not Plaintiff and the Class paid), or both.

**C.      Count 3 – Common Law Procedural Unconscionability.**

94.     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

95.     Defendants' business practices described above are procedurally unconscionable. Defendants conduct their business by way of contracts of adhesion and engage in business practices intentionally designed to price gouge by billing Plaintiff and the Class unreasonable and excessive fees for medical services.

**D.      Count 4 – Common Law Substantive Unconscionability.**

96.     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

97.     Defendants' business practices described above are substantively unconscionable. By both their business practices and by their business entity structure, Defendants price gouge by billing Plaintiff and the Class unreasonable and excessive fees for medical services.

98.     Defendants have willfully engaged in this conduct.

## IX

## RELIEF REQUESTED

99.     Plaintiff and the Class adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein.

100.     WHEREFORE, Plaintiff and the Class demands judgment against Defendants concurrently, for compensatory and punitive damages, the sum to be determined by a jury, which will fairly and adequately compensate Plaintiff and the Class for the above described damages and injuries. Plaintiff also demands additional, exemplary, and or punitive damages. Plaintiff and the Class also seek interest from the date of the incident, and the costs and fees of the proceeding, including but not limited to attorney's fees.

101.     More specifically, based upon the above allegations, Plaintiff and the Class respectfully asks the Court to:

a.     Certify this case as a class action on behalf of the Class as defined above, and appoint named Plaintiff as class representative and undersigned as lead counsel;

b.     Find that Defendants are liable under all legal claims asserted herein for their negligent and negligence-related but intentional/willful/wanton behavior (Count 1) in billing for unreasonable, excessive, and gouging amounts;

c.     Award permanent injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an order prohibiting Defendants or any of their current or future subsidiaries, parents, successors, predecessors, employees, contractors, agents, representatives, or assigns from marking up medical costs above usual and customary amounts;

d.      Award damages and punitive damages to Plaintiff and the Class in an amount to be determined at trial;

e.      Award restitution for certain damages to Plaintiff and the Class, including but not limited to payment of any other costs, including attorney's fees, incurred in clearing credit history or credit rating, and also including any costs, including attorney's fees, in connection with any civil or administrative proceeding to satisfy any debt, lien, or other obligation arising as a result of Defendants' wrongful and unlawful actions;

f.      Award Plaintiff and the Class costs as well as their reasonable litigation expenses and attorney's fees;

g.      Award Plaintiff and the Class pre- and post-judgment interest to the maximum extent allowable by law; and

h.      Award Plaintiff and the Class such other and further legal or equitable relief as equity and justice may require.

Respectfully submitted,

**McGEHEE ★ CHANG, LANDGRAF**

Jack E. McGehee
jmcgehee@lawtx.com
H.C. Chang
hcchang@lawtx.com
Benjamin T. Landgraf
blandgraf@lawtx.com
Benjamin C. Feiler
bfeiler@lawtx.com
10370 Richmond Ave., Suite 1300
Houston, Texas 77042
(713) 864-4000 Phone
(713) 868-9393 Fax
**ATTORNEYS FOR PLAINTIFF
AND THE CLASS**

FILED
1st JUDICIAL DISTRICT COURT
Santa Fe County
7/9/2019 2:01 PM
STEPHEN T. PACHECO
CLERK OF THE COURT
Jorge Montes

**STATE OF NEW MEXICO**
**SANTA FE COUNTY**
**FIRST JUDICIAL DISTRICT COURT**

**BENJAMIN ARMIJO, on behalf of himself**
**And all others similarly situated;**

    *Plaintiff,*

v.

    **Case No:** <u>D-101-CV-2019-01804</u>

    Case assigned to Wilson, Matthew Justin

**AFFILION, LLC; AFFILION PHYSICIANS**
**MANAGEMENT, INC, D/B/A AFFILION, INC.;**
**EMCARE, INC.; EMCARE HOLDINGS, INC.;**
**ENVISION HEALTHCARE CORPORATION;**
**AND ENVISION HEALTHCARE HOLDINGS,**
**INC.**

    *Defendants.*

## PLAINTIFF AND THE CLASS' DEMAND FOR A SIX PERSON JURY TRIAL

Pursuant to New Mexico Rule of Civil Procedure 1-038, Plaintiff Benjamin Armijo and the Class, through the undersigned counsel McGehee ★ Chang, Landgraf, hereby demands a trial by a jury of six-persons in the above-captioned case. Plaintiff and the Class further state that payment of the requisite deposit with the clerk of this Court pursuant to New Mexico Rule of Civil Procedure 1-038(C) was submitted contemporaneously with the filing of Plaintiff's Demand for a Six Person Jury Trial.

Respectfully submitted,

McGEHEE ★ CHANG, LANDGRAF

Jack E. McGehee
jmcgehee@lawtx.com
H.C. Chang
hcchang@lawtx.com
Benjamin T. Landgraf
blandgraf@lawtx.com
Benjamin C. Feiler
bfeiler@lawtx.com
10370 Richmond Ave., Suite 1300
Houston, Texas 77042
(713) 864-4000 Phone
(713) 868-9393 Fax
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all parties and counsel contemporaneously with the service of Plaintiff's Complaint. Upon filing, an endorsed copy of the same will be served through the Odyssey system to service contacts.

Jack E. McGehee

FILED
1st JUDICIAL DISTRICT COURT
Santa Fe County
7/9/2019 2:01 PM
STEPHEN T. PACHECO
CLERK OF THE COURT
Jorge Montes

**STATE OF NEW MEXICO**
**SANTA FE COUNTY**
**FIRST JUDICIAL DISTRICT COURT**

**BENJAMIN ARMIJO, on behalf of himself**
**And all others similarly situated;**

     *Plaintiff,*

v.

     **Case No:** <u>D-101-CV-2019-01804</u>
Case assigned to Wilson, Matthew Justin

**AFFILION, LLC; AFFILION PHYSICIANS**
**MANAGEMENT, INC, D/B/A AFFILION, INC;**
**EMCARE, INC.; EMCARE HOLDINGS, INC.;**
**ENVISION HEALTHCARE CORPORATION;**
**AND ENVISION HEALTHCARE HOLDINGS,**
**INC.**

     *Defendants.*

## AFFIDAVIT OF NON-ADMITTED LAWYER

| | |
|---|---|
| **STATE OF TEXAS** | ) |
| | ) |
| **COUNTY OF HARRIS** | ) |

Non-admitted lawyer, **Benjamin C. Feiler**, the Affiant herein, having been duly sworn, states upon oath:

1. Affiant is admitted to practice law and is in good standing to practice law in Texas.

2. Affiant has complied with Rule 24-106 NMRA.

3. Affiant has associated with Jack E. McGehee, counsel licensed to practice law in good standing in New Mexico.

Benjamin C. Feiler, Affiant, being first duly sworn, states upon oath, that all of the representations in this affidavit are true as far as affiant knows or is informed, and that such affidavit is true, accurate and complete to the best of affiant's knowledge and belief.

DATED: July 9, 2019.

                           Affiant

SUBSCRIBED AND SWORN TO before me this 9th day of July, 2019

                           NOTARY PUBLIC

My commission expires:

April 12, 2020



JOVANNA ESTELA ROSARIO
Notary Public, State of Texas
Comm. Expires 04-12-2020
Notary ID 130616010

STATE OF NEW MEXICO
SANTA FE COUNTY
FIRST JUDICIAL DISTRICT COURT

BENJAMIN ARMIJO, on behalf of himself
And all others similarly situated;

    *Plaintiff,*

v.                                        **Case No: D-101-CV-2019-01804**

AFFILION, LLC; AFFILION PHYSICIANS
MANAGEMENT, INC, D/B/A AFFILION, INC.;
EMCARE, INC.; EMCARE HOLDINGS, INC.;
ENVISION HEALTHCARE CORPORATION;
AND ENVISION HEALTHCARE HOLDINGS,
INC.

    *Defendants.*

## <u>PLAINTIFFS FIRST REQUEST FOR PRODUCTION<br>TO DEFENDANT AFFILION, LLC</u>

TO:    Defendant Affilion, LLC.

    Pursuant to Rule 1-034 of the New Mexico Rules of Civil Procedure, Defendant is requested to produce, in the offices of McGehee ✶ Chang, Landgraf, 10370 Richmond Avenue, Suite 1300, Houston, Texas 77042, within fifty (50) days after service of these Requests for Production, responsive documents, electronically stored information, and any items and tangible things which are now in the possession of or subject to the control of Defendant or its attorney.

Respectfully submitted,

**McGEHEE ★ CHANG, LANDGRAF**


*/s/ Benjamin C. Feiler*_____
Jack E. McGehee
jmcgehee@lawtx.com
H.C. Chang
hcchang@lawtx.com
Benjamin T. Landgraf
blandgraf@lawtx.com
Benjamin C. Feiler
bfeiler@lawtx.com
10370 Richmond Ave., Suite 1300
Houston, Texas 77042
(713) 864-4000 Phone
(713) 868-9393 Fax
**ATTORNEYS FOR PLAINTIFF
AND THE CLASS**


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on Defendant with a copy of Plaintiff's Complaint.

*/s/ Benjamin C. Feiler*_____
Benjamin C. Feiler

## DEFINITIONS AND INSTRUCTIONS

1. "Identify" means as follows: in those instances where the word "identify" is used in the following discovery requests, it should be interpreted as requiring with respect to persons, the person's name, last known mailing address, last known employment address, email address, fax number and telephone number. With respect to documents or things, it should be interpreted as requiring sufficient information regarding the item so that the party seeking discovery can locate and identify the object as readily as the party from whom it is being sought.

2. "You", "your", "Defendant", "Affilion" or "Affilion, LLC refers to Defendant Affilion, LLC, as well as its directors, partners, officers, managers, board members, members, physicians, agents, apparent/ostensible agents, contractors, and other staff and employees.

3. "Plaintiff," refers to Plaintiff Benjamin Armijo.

4. Co-Defendant refers to EMCARE, INC., a Texas Corporation; EMCARE HOLDINGS, Inc., a Texas Corporation; ENVISION HEALTHCARE CORPORATION, a Colorado Corporation; and ENVISION HEALTHCARE HOLDINGS, INC., a Colorado Corporation

5. "Persons" includes natural persons, firms, partnerships, associations, joint ventures, and corporations.

6. "Documents and Tangible Things" includes, but is not limited to all papers, books, accounts, drawings, graphs, charts, photographs, films, electronic or videotape recordings, ESI, and any other data compilations from which information can be obtained and translated, if necessary. A draft or non-identical copy is a separate document within the meaning of this term.

7. "Supplement" or "Supplementation" means that to the extent certain requests have been previously responded to and the responses at the time they were given were incorrect or incomplete or since then have become inaccurate or incomplete, it is requested that the prior responses be supplemented.

8. "Incident in Question" refers to the incident made the basis of this lawsuit as described in Plaintiff's Original Complaint, and any amendment or supplement thereto.

9. "Admission at issue" refers to any medical treatment provided to Benjamin Armijo in July, 2017.

10. "Designated Time Period" refers to the time period applicable to the following discovery requests is from 2010 through the present date, unless otherwise stated in the specific requests.

11. This "Lawsuit" refers to the above numbered and referenced cause.

12. "Communication" refers to the transmittal of information (including but not limited to facts, ideas, inquiries or otherwise) in any manner, method or form.

13. "Electronically Stored Information" or "ESI" refers to all (1) computer files, (2) information contained in computer memory, (3) information stored in storage media such as hard drives, backup tape, writable disks, electronic messages in any format, including without limitation, emails, text, and instant messages, tweet, messages sent using social media, messages sent using computers, messages sent using phones, messages sent using cell phones, (4) digital and analog recording of audio and/or video stored in any format on any server or storage medium, (5) emails stored in any format on any server or storage medium, and (6) any other form of electronically stored information.

## REQUESTS FOR PRODUCTION

Pursuant to Rule 1-034 of the New Mexico Rules of Civil Procedure, produce the following:

1. The itemized bill for each item and service provided to Plaintiff by Defendant during the admission at issue.

2. Complete copy of all medical records relating to the evaluation, stabilization and/or treatment of Plaintiff's injuries, including but not limited to, laboratory reports, diagnostic studies, x-rays, CT scans, MRI Studies, nurses notes, doctor's orders, operative reports, and financial responsibility investigations performed relating to classification of the patient for payment of services, etc., generated by you or the hospital treating Plaintiff, for services provided to Plaintiff.

3. All medical records relating to the evaluation, stabilization and/or treatment of Plaintiff during the admission at issue.

4. All medical records relating to any treatment provided to Plaintiff pursuant to CPT code 99283.

5. All medical records relating to any treatment provided to Plaintiff pursuant to CPT code 99285.

6. Any and all payments, adjustment, reimbursements or any consideration received from Plaintiff, anyone acting on Plaintiff's behalf, or other third party relating to any and all medical services provide to Plaintiff during the admission at issue.

7. Any and all payments, adjustment, reimbursements or any consideration received from Plaintiff, anyone acting on Plaintiff's behalf, or other third party relating to any and all medical services provide to Plaintiff pursuant to CPT code 99283.

8. Any and all payments, adjustment, reimbursements or any consideration received from Plaintiff, anyone acting on Plaintiff's behalf, or other third party relating to any and all medical services provide to Plaintiff pursuant to CPT code 99285.

9. The chargemaster list or similar document or ESI setting out the price or charge assessed for each item and service that was billed to Plaintiff during the admission at issue

10. The chargemaster list or similar document or ESI setting out the price or charge assessed for each item and service that was billed to Plaintiff pursuant to CPT code 99283.

11. The chargemaster list or similar document or ESI setting out the price or charge assessed for each item and service that was billed to Plaintiff pursuant to CPT code 99285.

12. The chargemaster list or similar document or ESI setting out the price or charge assessed for each item and service that can be billed to a patient pursuant to CPT codes 99283, 99284, and 99285.

13. Provide the UB-04 (also known as the CMS-1450 form) for all services billed to Plaintiff during the admission at issue.

14. Provide the CMS reimbursement rates, both Medicaid and Medicare, for all services billed to Plaintiff during the admission at issue.

15. Provide the CMS reimbursement rates, both Medicaid and Medicare, for all services billed to Plaintiff pursuant to CPT code 99283.

16. Provide the CMS reimbursement rates, both Medicaid and Medicare, for all services billed to Plaintiff pursuant to CPT code 99285.

17. Provide the CMS reimbursement rates, both Medicaid and Medicare, for all services billed to patients pursuant to CPT codes 99283, 99284, and 99285 for the years 2010 – present.

18. Provide the reimbursement rates for all medical services provided to Plaintiff if paid by the following carriers or third parties: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third-party payor insurance company.

19. Provide the reimbursement rates for all medical services billed to patients pursuant to CPT codes 99283, 99284, and 99285 if paid by the following carriers or third parties: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third party payor insurance company.

20. Provide the Manage Care Agreements for the following carriers or third parties: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third-party payor insurance company.

21. Copies of any and all correspondence, demands for payment, notices of liens, letters of discount of charges, offers of settlement, checks representing payment to you regarding or in any way connected to the charges for medical services provided to Plaintiff.

22. A complete copy of the fee agreement, assignment of interest agreement or contract for collection services entered into by and between you and any co-defendant or other party for the handling, collection or servicing of the account of Plaintiff, including any

6

modifications or renegotiated agreements respecting the collection and/or factoring of Plaintiff's account made the basis of this suit.

23. Copies of all investigations, incident reports, or other similar review or evaluation that relates to any aspect of the incident in question.

24. Copies of any material, including reports, notes, conclusions, opinions, telephone memoranda, or the like, preliminary or otherwise, prepared by any consulting expert and (1) used to form a basis either in whole or in part of the opinions of an expert who is to be called as a witness, or (2) reviewed by an expert who is to be called as a witness at trial or at a hearing.

25. Copies of your filed federal tax returns for the last five (5) years. In the alternative, copies of any document showing your net worth, total amount of assets and total amount of liabilities for the last 5 years.

26. Copies of any letters written to or by Defendant which pertains to the insurance coverage for this lawsuit (e.g. Reservations of Rights letters, non-waiver agreement, coverage dispute letters or rejection letters, etc.).

27. Copies of any pleadings in any case which pertains to the insurance coverage for this lawsuit.

28. Copies of any relevant employment agreements, partnership agreements, independent contractor agreements, or any other kind of working agreement, between you and any other person or entity that were in effect on the date of the incident in question.

29. Copies of any learned treatises, textbooks, or other reference materials which may be deemed an authoritative source for trial or any hearing in this case.

30. Any criminal convictions of Plaintiff, if you intend to use same for impeachment purposes at trial or any hearing.

31. Any and all documents, record, or other evidence that Defendant intends use for impeachment purposes at trial, any deposition or any hearing in this case.

32. Any and all exhibits that Defendant may offer at trial, any deposition or any hearing in this case.

33. A copy of any document criticizing or purporting to criticize Plaintiff, including but not limited to reports or documents generated by a private person or state, local, or federal agencies.

34. All documents that show the identity of any witness to the incident in question or any other individual with knowledge of relevant facts or information concerning the incident in question, the events leading up to it or any damages sustained by Plaintiff.

35. Contractual agreements with any co-defendant.

36. Contractual agreements with MountainView Regional Medical Center.

37. Contractual agreements with any hospital in New Mexico.

38. All correspondence or documents exchanged between or otherwise sent to or from any other party to this lawsuit.

39. Copies of any agreement between or among Defendants or their attorneys, that relate to the subject of this lawsuit, including but not limited to joint defense agreements.

40. Any statements by the Plaintiff, or his agent or former agent, however recorded or transcribed.

41. A copy of any and all "Reservation of Rights" or "Non-Waiver" agreements relating to the defense of this lawsuit or any documents referring to same.

42. Copies of any data stored electronically or magnetically which is responsive to any of the above Requests for Production. Such data should be produced in computer-readable form, if practical. If computer-readable production is not practicable, counsel for Plaintiff will work with counsel for Defendant to determine an acceptable manner of production.

43. Copies of any general policies, procedures and protocols in effect in July, 2017.

44. Copies of the table of contents for all policies and procedures in effect in July, 2017.

45. Copies of all policies and procedures relating to billing patients for medical services.

46. Copies of all policies and procedures relating to collection of outstanding patient accounts and bills for past medical services provided.

47. Copies of all policies and procedures relating to adjustments and write offs of outstanding patient accounts and bills for past medical services provided.

48. Copies of all policies and procedures relating to medical care provided pursuant to CPT codes 99283, 99284, and 99285.

49. Copies of any brochures or advertisements distributed or communicated to the public which lists or describes available medical services that can be provided by Defendant at MountainView Regional Medical Center in July, 2017.

50. Copies of any brochures or advertisements distributed or communicated to the public which lists or describes available medical services that can be provided by Defendant at any hospital in the state of New Mexico.

51. Copies of any brochures or advertisements distributed or communicated to the public that describes how qualified employees and/or doctors are selected by Defendant in July, 2017.

52. Copies of any brochures or advertisements distributed or communicated to the public that describes the competence of Defendants' employees in July, 2017.

53. All in-service sign-in sheets for the period of time 2 years prior to the incident in question through 6 months after the incident in question at MountainView Regional Medical Center.

54. Documents identifying each person you expect to be called as a witness at trial, the subject matter of the witness's expected testimony and the substance of the witness's testimony.

55. Documents identifying the name, address and telephone number of each individual likely to have discoverable information that you may use to support any defenses you will allege in this lawsuit as well as the subjects of such information.

56. All documents, electronically stored information, and tangible things that you may use to support any defenses you allege in this lawsuit.

57. Any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this lawsuit or to indemnify or reimburse for payments made to satisfy the judgment.

58. Documents that identify each person you may call as an expert witness at trial, the subject matter on which the expert is expected to testify and the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

59. Documents identifying the qualifications of person you may call as an expert witness at trial, including a copy of or the name and address of the custodian of any reports prepared by the expert regarding the pending action, a list of all publications authored by the witness within the preceding ten (10) years, and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four (4) years.

60. Copies of any documents describing the job descriptions of John Butcher, M.D. on July 27, 2017.

61. Copies of any relevant employment agreements, partnership agreements, independent contractor agreements, or any other kind of working agreement, between you and any other Defendant that were in effect on the date of the incident in question.

62. Copies of any relevant employment agreements, partnership agreements, independent contractor agreements, or any other kind of working agreement, between you and any person or entity that allowed John Butcher, M.D. to provide medical services at MountainView Regional Medical Center that were in effect on the date of the incident in question.

63. Copies of any relevant employment agreements, partnership agreements, independent contractor agreements, or any other kind of working agreement, between you and John Butcher, M.D. that were in effect on the date of the incident in question.

64. All bills, letters, requests for payments, ESI, correspondence, emails, phone call transcripts, messages, or other communications sent to Plaintiff in seeking information or payment for medical services provided to Plaintiff during the admission at issue.

65. All bills, letters, requests for payments, ESI, correspondence, emails, phone call transcripts, messages, or other communications sent to Plaintiff in seeking information or payment for medical services provided to Plaintiff pursuant to CPT code 99283.

66. All bills, letters, requests for payments, ESI, correspondence, emails, phone call transcripts, messages, or other communications sent to Plaintiff in seeking information or payment for medical services provided to Plaintiff pursuant to CPT code 99285.

**STATE OF NEW MEXICO**
**SANTA FE COUNTY**
**FIRST JUDICIAL DISTRICT COURT**

**BENJAMIN ARMIJO, on behalf of himself**
**And all others similarly situated;**

  *Plaintiff,*

v.              **Case No: D-101-CV-2019-01804**

**AFFILION, LLC; AFFILION PHYSICIANS**
**MANAGEMENT, INC, D/B/A AFFILION, INC.;**
**EMCARE, INC.; EMCARE HOLDINGS, INC.;**
**ENVISION HEALTHCARE CORPORATION;**
**AND ENVISION HEALTHCARE HOLDINGS,**
**INC.**

  *Defendants.*

## PLAINTIFFS' FIRST INTERROGATORIES
## TO DEFENDANT AFFILION, LLC

TO:  Defendant Affilion, LLC.

  Pursuant to Rule 1-033 of the New Mexico Rules of Civil Procedure, Plaintiff submits the attached interrogatories to Defendant Affilion, LLC. We request that your sworn answers be served separately, in writing, under oath, on the basis of all information available to Defendant, within fifty (50) days after service of these interrogatories, to McGEHEE ★ CHANG, LANDGRAF, 10370 Richmond Ave., Suite 1300, Houston, Texas 77042. These interrogatories and your sworn answers may be offered in evidence at the trial of the above cause.

Respectfully submitted,

**McGEHEE ★ CHANG, LANDGRAF**


_/s/ Benjamin C. Feiler_____
Jack E. McGehee
jmcgehee@lawtx.com
H.C. Chang
hcchang@lawtx.com
Benjamin T. Landgraf
blandgraf@lawtx.com
Benjamin C. Feiler
bfeiler@lawtx.com
10370 Richmond Ave., Suite 1300
Houston, Texas 77042
(713) 864-4000 Phone
(713) 868-9393 Fax
**ATTORNEYS FOR PLAINTIFF
AND THE CLASS**


**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served on Defendant with a copy of Plaintiff's Complaint.


_/s/ Benjamin C. Feiler_____
Benjamin C. Feiler

## DEFINITIONS AND INSTRUCTIONS

1. "Identify" means as follows: in those instances where the word "identify" is used in the following discovery requests, it should be interpreted as requiring with respect to persons, the person's name, last known mailing address, last known employment address, email address, fax number and telephone number. With respect to documents or things, it should be interpreted as requiring sufficient information regarding the item so that the party seeking discovery can locate and identify the object as readily as the party from whom it is being sought.

2. "You", "your", "Defendant", "Affilion" or "Affilion, LLC refers to Defendant Affilion, LLC, as well as its directors, partners, officers, managers, board members, members, physicians, agents, apparent/ostensible agents, contractors, and other staff and employees.

3. "Plaintiff," refers to Plaintiff Benjamin Armijo.

4. Co-Defendant refers to EMCARE, INC., a Texas Corporation; EMCARE HOLDINGS, Inc., a Texas Corporation; ENVISION HEALTHCARE CORPORATION, a Colorado Corporation; and ENVISION HEALTHCARE HOLDINGS, INC., a Colorado Corporation

5. "Persons" includes natural persons, firms, partnerships, associations, joint ventures, and corporations.

6. "Documents and Tangible Things" includes, but is not limited to all papers, books, accounts, drawings, graphs, charts, photographs, films, electronic or videotape recordings, ESI, and any other data compilations from which information can be obtained and translated, if necessary. A draft or non-identical copy is a separate document within the meaning of this term.

7. "Supplement" or "Supplementation" means that to the extent certain requests have been previously responded to and the responses at the time they were given were incorrect or incomplete or since then have become inaccurate or incomplete, it is requested that the prior responses be supplemented.

8. "Incident in Question" refers to the incident made the basis of this lawsuit as described in Plaintiff's Original Complaint, and any amendment or supplement thereto.

9. "Admission at issue" refers to any medical treatment provided to Benjamin Armijo in July, 2017.

10. "Designated Time Period" refers to the time period applicable to the following discovery requests is from 2010 through the present date, unless otherwise stated in the specific requests.

11. This "Lawsuit" refers to the above numbered and referenced cause.

3

12. "Communication" refers to the transmittal of information (including but not limited to facts, ideas, inquiries or otherwise) in any manner, method or form.

13. "Electronically Stored Information" or "ESI" refers to all (1) computer files, (2) information contained in computer memory, (3) information stored in storage media such as hard drives, backup tape, writable disks, electronic messages in any format, including without limitation, emails, text, and instant messages, tweet, messages sent using social media, messages sent using computers, messages sent using phones, messages sent using cell phones, (4) digital and analog recording of audio and/or video stored in any format on any server or storage medium, (5) emails stored in any format on any server or storage medium, and (6) any other form of electronically stored information.

## INTERROGATORIES

Pursuant to Rule 1-033 of the New Mexico Rules of Civil Procedure, answer the following:

1.  State the amount billed/charged for each medical service provided to Plaintiff during the admission at issue. In your answer, please state the medical service provided, the CPT code for the medical service provided, and the amount billed pursuant to the CPT code and medical service provided. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

2.  State the dollar amount that you bill and/or charge for each medical service that can be provided to any patient pursuant to CPT codes 99283, 99284, and 99285 for the years 2010 – present. In your answer, please state each medical service that can be provided, the CPT code for each medical service provided, and the amount billed/charged pursuant to the CPT code and medical service provided. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

3.  State the amount you were paid for each medical service provided to Plaintiff during the admission at issue. In your answer, please state the medical service provided, the CPT code for the medical service provided, and the amount you were paid pursuant to the CPT code and medical service provided. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

4.  State the amount of any and all payments, adjustment, reimbursements or any consideration received from Plaintiff, anyone acting on Plaintiff's behalf, or other third party relating to any and all medical services provide to Plaintiff during the admission at issue. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

5.  State the amount of any and all payments, adjustment, reimbursements or any consideration received from Plaintiff, anyone acting on Plaintiff's behalf, or other third party relating to any and all medical services provide to Plaintiff pursuant to CPT code 99283. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**
6.

7. State the amount of any and all payments, adjustment, reimbursements or any consideration received from Plaintiff, anyone acting on Plaintiff's behalf, or other third party relating to any and all medical services provide to Plaintiff pursuant to CPT code 99285. Please also identify any document that you relied on in support of this answer.

   **ANSWER:**

8. State the chargemaster list rate for the price or charge assessed for each item and service that was billed to Plaintiff during the admission at issue. Please also identify any document that you relied on in support of this answer.

   **ANSWER:**

9. State the chargemaster list rate for the price or charge assessed for each item and service that was billed to Plaintiff pursuant to CPT code 99283. Please also identify any document that you relied on in support of this answer.

   **ANSWER:**

10. State the chargemaster list rate for the price or charge assessed for each item and service that was billed to Plaintiff pursuant to CPT code 99285. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

11. State the chargemaster list rate for the price or charge assessed for each item and service that can be billed to a patient pursuant to CPT codes 99283, 99284, and 99285 for the years 2010 – present. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

12. State the CMS reimbursement rates, both Medicaid and Medicare, for all services billed to Plaintiff during the admission at issue. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

13. State the CMS reimbursement rates, both Medicaid and Medicare, for all services billed to Plaintiff pursuant to CPT code 99283. Please also identify any document that you relied on in support of this answer.

6

**ANSWER:**

14. State the CMS reimbursement rates, both Medicaid and Medicare, for all services billed to Plaintiff pursuant to CPT code 99285. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

15. State the CMS reimbursement rates, both Medicaid and Medicare, for all services billed to patients pursuant to CPT codes 99283, 99284, and 99285 for the years 2010 – present. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

16. State the in-network reimbursement rates for all medical services provided to Plaintiff if paid by the following carriers or third parties: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third-party payor insurance company. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

17. State the in-network reimbursement rates for the years 2010 – present for all medical services billed to patients pursuant to CPT codes 99283, 99284, 99285 if paid by the following carriers or third parties: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third party payor insurance company. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

18. Identify every hospital for which Affilion, Inc. provides staffing of emergency department physician and/or hospitalist services in the state of New Mexico. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

19. State the total number of patients for the years 2010 – present that were billed/charged for medical services pursuant to CPT code 99283. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

20. State the total number of patients for the years 2010 – present that were billed/charged for medical services pursuant to CPT code 99284. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

21. State the total number of patients for the years 2010 – present that were billed/charged for medical services pursuant to CPT code 99285. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

22. State the relationship between you and any Co-Defendant. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

23. State your total net worth. Please also identify any document that you relied on in support of this answer.

    **ANSWER:**

24. Identify the highest in-network amount paid by major private health insurance plans, such as: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third party payor insurance company, for medical services provided pursuant to CPT Codes 99283, 99284, and 99285.

    **ANSWER:**

25. Identify the total number of individuals from 2010 – present that were sent medical bills by Defendants (including but not limited to Defendants and any of Defendants' affiliates, subsidiaries, parents, successors, predecessors, employees, contractors, agents, representatives, or assigns) for amounts that exceed the highest in-network amount paid by major private health insurance plans for such services, such as: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third party payor insurance company.

    **ANSWER:**

26. Identify all bills, letters, requests for payments, ESI, correspondence, emails, phone call transcripts, messages, or other communications sent to Plaintiff seeking information or payment for medical services provided to Plaintiff during the admission at issue.

**ANSWER:**

27. All bills, letters, requests for payments, ESI, correspondence, emails, phone call transcripts, messages, or other communications sent to Plaintiff seeking information or payment for medical services provided to Plaintiff pursuant to CPT code 99283.

**ANSWER:**

28. All bills, letters, requests for payments, ESI, correspondence, emails, phone call transcripts, messages, or other communications sent to Plaintiff seeking information or payment for medical services provided to Plaintiff pursuant to CPT code 99285.

**ANSWER:**

STATE OF NEW MEXICO
SANTA FE COUNTY
FIRST JUDICIAL DISTRICT COURT

BENJAMIN ARMIJO, on behalf of himself
And all others similarly situated;

    *Plaintiff,*

v.                                  **Case No: D-101-CV-2019-01804**

AFFILION, LLC; AFFILION PHYSICIANS
MANAGEMENT, INC, D/B/A AFFILION, INC.;
EMCARE, INC.; EMCARE HOLDINGS, INC.;
ENVISION HEALTHCARE CORPORATION;
AND ENVISION HEALTHCARE HOLDINGS,
INC.

    *Defendants.*

<u>**PLAINTIFFS' FIRST REQUESTS FOR ADMISSION
TO DEFENDANT AFFILION, LLC**</u>

TO:    Defendant Affilion, LLC.

      Pursuant to Rule 1-036 of the New Mexico Rules of Civil Procedure, Plaintiff submits the attached Requests for Admission to Defendant Affilion, LLC. We request that your answers be served separately, in writing, on the basis of all information available to Defendant, within thirty (50) days after service of these interrogatories, to McGEHEE ★ CHANG, LANDGRAF, 10370 Richmond Ave., Suite 1300, Houston, Texas 77042.  These interrogatories and your sworn answers may be offered in evidence at the trial of the above cause.

Respectfully submitted,

**McGEHEE ★ CHANG, LANDGRAF**


_____/s/ Benjamin C. Feiler_____
Jack E. McGehee
jmcgehee@lawtx.com
H.C. Chang
hcchang@lawtx.com
Benjamin T. Landgraf
blandgraf@lawtx.com
Benjamin C. Feiler
bfeiler@lawtx.com
10370 Richmond Ave., Suite 1300
Houston, Texas 77042
(713) 864-4000 Phone
(713) 868-9393 Fax
**ATTORNEYS FOR PLAINTIFF
AND THE CLASS**


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on Defendant with a copy of Plaintiff's Complaint.

_/s/ Benjamin C. Feiler_____
Benjamin C. Feiler

## DEFINITIONS AND INSTRUCTIONS

1. "Identify" means as follows: in those instances where the word "identify" is used in the following discovery requests, it should be interpreted as requiring with respect to persons, the person's name, last known mailing address, last known employment address, email address, fax number and telephone number. With respect to documents or things, it should be interpreted as requiring sufficient information regarding the item so that the party seeking discovery can locate and identify the object as readily as the party from whom it is being sought.

2. "You", "your", "Defendant", "Affilion" or "Affilion, LLC refers to Defendant Affilion, LLC, as well as its directors, partners, officers, managers, board members, members, physicians, agents, apparent/ostensible agents, contractors, and other staff and employees.

3. "Plaintiff," refers to Plaintiff Benjamin Armijo.

4. Co-Defendant refers to EMCARE, INC., a Texas Corporation; EMCARE HOLDINGS, Inc., a Texas Corporation; ENVISION HEALTHCARE CORPORATION, a Colorado Corporation; and ENVISION HEALTHCARE HOLDINGS, INC., a Colorado Corporation

5. "Persons" includes natural persons, firms, partnerships, associations, joint ventures, and corporations.

6. "Documents and Tangible Things" includes, but is not limited to all papers, books, accounts, drawings, graphs, charts, photographs, films, electronic or videotape recordings, ESI, and any other data compilations from which information can be obtained and translated, if necessary. A draft or non-identical copy is a separate document within the meaning of this term.

7. "Supplement" or "Supplementation" means that to the extent certain requests have been previously responded to and the responses at the time they were given were incorrect or incomplete or since then have become inaccurate or incomplete, it is requested that the prior responses be supplemented.

8. "Incident in Question" refers to the incident made the basis of this lawsuit as described in Plaintiff's Original Complaint, and any amendment or supplement thereto.

9. "Admission at issue" refers to any medical treatment provided to Benjamin Armijo in July, 2017.

10. "Designated Time Period" refers to the time period applicable to the following discovery requests is from 2010 through the present date, unless otherwise stated in the specific requests.

11. This "Lawsuit" refers to the above numbered and referenced cause.

12. "Communication" refers to the transmittal of information (including but not limited to facts, ideas, inquiries or otherwise) in any manner, method or form.

13. "Electronically Stored Information" or "ESI" refers to all (1) computer files, (2) information contained in computer memory, (3) information stored in storage media such as hard drives, backup tape, writable disks, electronic messages in any format, including without limitation, emails, text, and instant messages, tweet, messages sent using social media, messages sent using computers, messages sent using phones, messages sent using cell phones, (4) digital and analog recording of audio and/or video stored in any format on any server or storage medium, (5) emails stored in any format on any server or storage medium, and (6) any other form of electronically stored information.

## REQUESTS FOR ADMISSION

Pursuant to Rule 1-036 of the New Mexico Rules of Civil Procedure, admit or deny the following:

1. Admit that you billed/charged Plaintiff $2917.00 for medical services provided on July 15, 2017.

2. Admit that you billed/charged Plaintiff $988.00 for medical services provided on July 27, 2017.

3. Admit that you billed/charged Plaintiff $2917.00 pursuant to CPT code 99285 for medical services provided on July 15, 2017.

4. Admit that you billed/charged Plaintiff $988.00 pursuant to CPT code 99283 for medical services provided on July 27, 2017.

5. Admit that you were paid $2917.00 for medical services provided to Plaintiff on July 15, 2017.

6. Admit that you were paid $988.00 for medical services provided to Plaintiff on July 27, 2017.

7. Admit that Plaintiff was provided medical services in the emergency department at MountainView Regional Medical Center on July 15, 2017.

8. Admit that Plaintiff was provided medical services in the emergency department at MountainView Regional Medical Center on July 27, 2017.

9. Admit that $2917.00 is in excess of the CMS reimbursement rates, both Medicaid and Medicare, for the years 2010 – present for medical services rendered pursuant to CPT Code 99285.

10. Admit that $988.00 is in excess of the CMS reimbursement rates, both Medicaid and Medicare, for the years 2010 – present for medical services rendered pursuant to CPT Code 99283.

11. Admit that $2917.00 is in excess of the in-network reimbursement rates for medical services billed to patients pursuant to CPT code 99285 if paid by the following carriers or third parties: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third party payor insurance company.

12. Admit that $988.00 is in excess of the in-network reimbursement rates for medical services billed to patients pursuant to CPT code 99283 if paid by the following carriers or third parties: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third party payor insurance company.

13. Admit that the CMS reimbursement rates, both Medicaid and Medicare, for medical services rendered pursuant to CPT Codes 99283, 99284 and 99285 represents the reasonable, regular and customary rate for said medical services.

14. Admit that the in-network reimbursement rates for medical services billed to patients pursuant to CPT codes 99283, 99284 and 99285 if paid by the following carriers or third parties: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third party payor insurance company, represents the reasonable, regular and customary rate for said medical services.

15. Admit that patients were charged and/or billed for medical services pursuant to CPT Codes 99283, 99284 and 99285 during the years 2010 – the present at rates that exceed the CMS reimbursement rates, both Medicaid and Medicare, or the in-network reimbursement rates for said services if paid by the following carriers or third parties: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third party payor insurance company.

16. Admit that the number of patients who were charged and/or billed for medical services pursuant to CPT Codes 99283, 99284 and 99285 during the years 2010 – the present at rates that exceed the CMS reimbursement rates, both Medicaid and Medicare, or the in-network reimbursement rates for said services if paid by the following carriers or third parties: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third party payor insurance company, satisfies any numerosity requirements for a class action.

17. Admit that with respect to the patients referenced in request for admission numbers 15 and 16 that there are common questions of law or fact common to all.

18. Admit that the claims asserted by Plaintiff are typical of the claims of the patients referenced in request for admission numbers 15 and 16.

19. Admit that the prosecution of separate actions by the patients referenced in request for admission numbers 15 and 16 would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendants.

20. Admit that the prosecution of separate actions by the patients referenced in request for admission numbers 15 and 16 would create a risk of adjudication's with respect to said

purchasers which would as a practical matter be dispositive of the interests of the other patients not parties to this action.

21. Admit that the questions of law or fact common to the patients referenced in request for admission numbers 15 and 16 predominate over any questions affecting only individual patients.

22. Admit that a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

23. Admit that $988.00 is in excess of the highest in-network amount paid by major private health insurance plans, such as: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third party payor insurance company, for medical services provided pursuant to CPT Code 99283.

24. Admit that $1,474.00 is in excess of the highest in-network amount paid by major private health insurance plans, such as: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third party payor insurance company, for medical services provided pursuant to CPT Code 99284.

25. Admit that $2,197.00 is in excess of the highest in-network amount paid by major private health insurance plans, such as: (1) Aetna health management; (2) BlueCross BlueShield of Texas; (3) United Health Care; and (4) other similar major third party payor insurance company, for medical services provided pursuant to CPT Code 99285.

26. Admit that you sent Plaintiff a bill for $988.00 for medical service provided on July 27, 2017.

27. Admit that you sent Plaintiff a bill for $2917.00 for medical service provided on July 15, 2017.

**STATE OF NEW MEXICO**
**SANTA FE COUNTY**
**FIRST JUDICIAL DISTRICT COURT**

**BENJAMIN ARMIJO, on behalf of himself**
**And all others similarly situated;**

     *Plaintiff,*

v.                               **Case No: D-101-CV-2019-01804**

**AFFILION, LLC; AFFILION PHYSICIANS**
**MANAGEMENT, INC, D/B/A AFFILION, INC.;**
**EMCARE, INC.; EMCARE HOLDINGS, INC.;**
**ENVISION HEALTHCARE CORPORATION;**
**AND ENVISION HEALTHCARE HOLDINGS,**
**INC.**

     *Defendants.*

### PLAINTIFF'S NOTICE OF ORAL DEPOSITION OF JOHN BUTCHER, MD

TO:   **Affilion, LLC.**

     This is to notify you that pursuant to New Mexico Rule of Civil Procedure 1-030, Plaintiff will take the deposition of John Butcher, MD. via videotaped and stenographic recording means. Said deposition will commence at **1:00 p.m. on September 5, 2019**, at **a mutually agreeable location**. Said deposition will continue from day to day until completed.

     Please take further notice that, in connection with the taking of her deposition, Pursuant to New Mexico Rules of Civil Procedure 1-030B(5) and 1-034, John Butcher, MD shall produce, at the commencement of the taking of her deposition, the documents or other tangible things set forth in Exhibit "A" attached hereto.

Respectfully submitted,

McGEHEE ✫ CHANG, LANDGRAF

_/s/Benjamin C. Feiler_

Jack E. McGehee
jmcgehee@lawtx.com
H.C. Chang
hcchang@lawtx.com
Benjamin T. Landgraf
blandgraf@lawtx.com
Benjamin C. Feiler
bfeiler@lawtx.com
10370 Richmond Ave., Suite 1300
Houston, Texas 77042
(713) 864-4000 Phone
(713) 868-9393 Fax
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on Defendant with a copy of Plaintiff's Complaint.

_/s/Benjamin C. Feiler_

Benjamin C. Feiler

**EXHIBIT A**

**RULE 1-030B(5) AND 1-034 PRODUCTION REQUEST**:

1. A copy of your current curriculum vitae.

2. Copies of all documents you reviewed in preparation for your deposition.

3. Copies of all journals, diaries, notebooks, and/or other similar documentation made or prepared by you, or anyone acting on your behalf, relating to the subject matter of this lawsuit.