IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BENJAMIN ARMIJO and
OFELIA RONQUILLO, on behalf of
themselves and all others similarly situated,

    Plaintiffs,

    vs.                                    No. CV 19-750 KG/GJF

AFFILION, LLC; EMCARE, INC.;
EMCARE HOLDINGS, INC.;
ENVISION HEALTHCARE CORPORATION;
and ENVISION HEALTHCARE HOLDINGS, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), filed August 30, 2019. (Doc. 18). Plaintiffs filed a response on September 13, 2019, and Defendants filed a reply on September 27, 2019. (Docs. 20 and 24). Having considered the briefing, the record of the case, and the applicable law, the Court grants the Motion to Dismiss and dismisses Plaintiffs' claims with prejudice.

    *I.*     *Background*

Plaintiffs initiated this action on July 9, 2019, in the First Judicial District Court for the State of New Mexico, Santa Fe County. (Doc. 1) at 2. In their First Amended Complaint, filed July 29, 2019, Plaintiffs bring a purported class action against Defendants and claim Defendants engaged in "a systematic and planned scheme … to take advantage of those in need of medical care." (Doc. 1-2) at 15. Plaintiffs claim Defendants formed "outsource provider" relationships with hospitals and other medical facilities "in order to gouge those in need by foisting unreasonable and excessive fees on such patients." *Id.* Specifically, Plaintiffs state that

Defendants billed Plaintiffs and putative class members "at excessive rates above the usual and customary fees for similar medical services" based on Plaintiffs' and putative class members' "limited negotiating power." *Id.* at 16.  Plaintiff Armijo states he was a patient at Mountain View Regional Medical Center on July 15, 2017, and July 27, 2017, and was billed $2,197.00 by Defendants on July 15, 2017, and $988.00 by Defendants on July 27, 2017.  *Id.* at 18.  Similarly, Plaintiff Ronquillo states she was a patient at Mountain View Regional Medical Center on November 24, 2018, for which she was billed $2,197.00 by Defendants.  *Id.* at 18-19.  Plaintiffs claim these fees were unreasonable and excessive because they exceed "the usual and customary fees for such services," and Plaintiffs had no way to negotiate lower and more reasonable fees.  *Id.*

Plaintiffs bring four causes of action against Defendants: (1) negligence, (2) breach of implied contract, (3) common law procedural unconscionability, and (4) common law substantive unconscionability.  *Id.* at 23-26.  Plaintiffs ask for injunctive relief as well as compensatory and punitive damages.  *Id.* at 27-28.  Plaintiffs bring this action on behalf of themselves and a putative class defined as: "All individuals who were sent medical bills by Defendants … within the past 6 years for amounts that exceed the highest in-network amount paid by major private health insurance plans for such services."  *Id.* at 20.

Defendants removed this case to federal court on August 15, 2019, asserting jurisdiction on the basis of 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, because it is a purported class action in which there are more than 100 putative class members, it is between citizens of different states, and the amount in controversy exceeds the sum of $5,000,000.00.  (Doc. 1) at 3-4.  In their Motion to Dismiss, Defendants argue Plaintiffs have failed to allege sufficient facts to

satisfy Fed. R. Civ. P. 8 and move for dismissal of Plaintiffs' claims for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  (Doc. 18).

II.   Discussion

  A.  Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations which, if true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Moreover, a plaintiff's factual allegations against a defendant "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC. v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (citation omitted).  Stated differently, a plaintiff must provide sufficient allegations to "nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In deciding a Rule 12(b)(6) motion, a court disregards conclusory statements of law and considers whether the remaining factual allegations plausibly suggest the defendant is liable. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  In sum, the Tenth Circuit has concluded that the *Twombly/Iqbal* standard is "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citation omitted).  Determining whether a complaint states a plausible claim for relief "is context

specific, requiring the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

In addition, the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A complaint that "tenders naked assertions devoid of further factual enhancement" does not meet the Rule 8(a)(2) pleading standard. *Id.* (quoting *Twombly*, 550 U.S. at 557). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the federal pleading duty is not trivial. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Indeed, Rule 8 pleading requirements "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-89.

Because this is a diversity case based on New Mexico law, this Court must ascertain and apply New Mexico law. *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994). In doing so, the Court must either follow the decisions of the New Mexico Supreme Court or attempt to predict what the New Mexico Supreme Court would do. *Coll v. First Am. Title Ins. Co.,* 642 F.3d 876, 886 (10th Cir. 2011); *Federated Serv. Ins. Co. v. Martinez*, 529 Fed. Appx. 954, 957 (10th Cir. 2013) (if no controlling state supreme court case, district court must predict how such court would rule based on intermediate appellate decisions, decisions of other states, federal decisions, and general weight and trend of authority).

### B. Count 1—Negligence

In support of their negligence claim, Plaintiffs allege Defendants owed them a duty to: (1) "provide the actual medical services that were billed;" (2) "exercise reasonable care in order to bill Plaintiffs and the Class only for reasonable, usual and customary fees for medical services actually provided;" and (3) "have procedures in place to ascertain reasonable, usual and customary fees for medical services." (Doc. 1-2) at 23. Plaintiffs state that Defendants breached

this duty and that Plaintiffs were harmed by this breach.  *Id.*  Defendants contend these allegations are insufficient to state a claim for negligence because the alleged duties are not legally recognized obligations, Plaintiffs do not state how Defendants breached the alleged duties, and Plaintiffs do not state how they were damaged.  (Doc. 18) at 6-11.

"Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages."  *Herrera v. Quality Pontiac,* 2003-NMSC-018, ¶ 6, 134 N.M. 43.  "The absence of any of these elements is fatal to a negligence claim."  *Romero v. Giant Stop-N-Go of New Mexico, Inc.*, 2009-NMCA-059, ¶ 5, 146 N.M. 520.  A duty exists "only if the obligation of the defendant [is] one to which the law will give recognition and effect.  In other words, a duty establishes the legally recognized obligation of the defendant to the plaintiff."  *Herrera*, 2003-NMSC-018, ¶ 9 (citations omitted); *see also Schear v. Bd. of Cnty. Comm'rs*, 1984-NMSC-079, ¶ 4, 101 N.M. 671 ("Whether a duty exists is a question of law for the courts to decide.").

Plaintiffs fail to allege any legally recognized duty owed them by Defendants.  As a general rule, an individual has no duty to protect another from harm unless they have "a special relationship."  *Romero*, 2009-NMCA-059, ¶ 7; *see also Johnstone v. City of Albuquerque*, 2006-NMCA-119, ¶ 7, 140 N.M. 596 ("To impose a duty, a relationship must exist that legally obligates Defendant to protect Plaintiff's interest.").  While Plaintiffs allege Defendants owe them a duty based on the medical care rendered, Defendants are not medical providers so the special duty that arises from the doctor-patient relationship does not apply here.  *See Salopek v. Friedman*, 2013-NMCA-087, ¶ 7, 308 P.3d 139 ("[A] doctor owes a general duty to provide

competent care in treating a patient's medical condition," and a doctor's duty arises in the context of "treating, operating upon, making a diagnosis of, or caring for a patient.").

Plaintiffs also point to no statute or case law that establishes a financial duty based on a relationship between patients and medical billing companies. Indeed, in similar cases alleging negligence based on medical billing practices, courts have found no fiduciary duty owed to a patient by a hospital or medical billing service. *See e.g., Burton v. William Beaumont Hosp.*, 373 F.Supp.2d 707, 723-24 (E.D. Mich. 2005) ("While Michigan courts have recognized fiduciary relationships such as … doctors and patients, there is no authority for the proposition that a fiduciary relationship exists between a hospital and a patient for what plaintiffs complain of here, namely billing practices."); *Morrell v. Wellstar Health Sys., Inc.*, 633 S.E.2d 68, 74 (Ga. App. Ct. 2006) ("[W]e hold that a nonprofit hospital generally has no fiduciary duty to a patient with respect to the price the hospital charges for medical care."); *see also Kreischer v. Armijo*, 1994-NMCA-118, ¶ 6, 118 N.M. 671 ("[T]he difference between a tort and contract action is that a breach of contract is a failure of performance of a duty arising or imposed by agreement; whereas, a tort is a violation of a duty imposed by law."). Absent a legally imposed duty owed by Defendants, Plaintiffs' negligence claim fails.

In addition, Plaintiffs allege Defendants owed them a duty to provide the medical services that were billed and to only bill them for "reasonable, usual and customary fees" for medical services actually provided. However, Plaintiffs do not allege that they did not receive the medical services they were billed for or that Plaintiffs actually paid for any services they did not receive. Instead, Plaintiffs allege they and the putative class suffered damages "either by unjust monies paid to Defendants, damage to Plaintiffs' and the Class' credit rating and financial balance/net worth … or both." (Doc. 1-2) at 25. This allegation is insufficient to infer that

Plaintiffs were actually damaged by Defendants' alleged breach of duty.  *See New Mexico Pub. Schools Ins. Auth. v. Arthur J. Gallagher & Co.*, 2008-NMSC-067, ¶ 36, 145 N.M. 316 ("[T]here can be no cause of action for negligence unless and until there has been a resulting injury."); *Kansas Penn Gaming, LLC*, 656 F.3d at 1210 ("[A] plaintiff must offer specific factual allegations to support each claim.") (citation omitted).  Plaintiffs have failed to plea facts that they are adequate class representatives because they do not allege how they have been damaged.  *See In re Thornburg Mortg., Inc.*, 912 F.Supp.2d 1178, 1224 (D.N.M. 2012) ("The Supreme Court has repeatedly held [that] a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."); *Harrison v. Leviton Mfg. Co.*, 2006 WL 2990524, at *4 (N.D. Okla.) ("Plaintiff may not represent a putative class if he has not actually suffered the injury for which the class seeks redress.").

Based on the foregoing, the Court concludes Plaintiffs have not plead sufficient facts to support a negligence claim.

### C.  Count 2—Breach of Implied Contract

Plaintiffs' claim for breach of an implied contract is based on the following allegations: (1) Plaintiffs "did not choose [their] medical provider by name and … did not choose any Defendants;" (2) Defendants provided medical services to Plaintiffs and the Class; (3) Defendants did not obtain a written or oral contract to perform such services; (4) Defendants' fees "far exceeded the usual and customary fees charged for the same or similar medical services and were thus unreasonable;" and (5) Plaintiffs and the Class were damaged "either by unjust monies paid to Defendants, damage to Plaintiffs' and the Class' credit rating and financial balance/net worth … or both."  (Doc. 1-2) at 24-25.  Defendants argue Plaintiffs have not alleged sufficient facts to show the formation of an implied contract because they do not allege what

7

representations Defendants made, how those representations were communicated, or what Plaintiffs promised in return. (Doc. 18) at 13-17.

To state a viable claim for breach of an implied contract under New Mexico law, Plaintiffs must claim they had a valid contract with Defendants, that Defendants breached the contract, and that Plaintiffs suffered injuries caused by Defendants' breach. *Camino Real Mobile Home Park P'ship v. Wolfe*, 1995-NMSC-013, ¶ 18, 119 N.M. 436, *overruled on other grounds by Sunnyland Farms, Inc. v. Cent. New Mexico Elec. Co-op, Inc.*, 2013-NMSC-017, 301 P.3d 387. An implied contract is not expressly stated but can be inferred "from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Orion Tech. Res., LLC v. Los Alamos Nat. Sec., LLC*, 2012-NMCA-097, ¶ 9, 287 P.3d 967. An implied contract may be evidenced by the course of conduct between the parties, written representations, oral representations, or a combination of representations and conduct. *Id.* ¶ 10.

Plaintiffs allege the parties reached an agreement that "medical services would be provided for a usual and customary fee." (Doc. 1-2) at 24. However, Plaintiffs provide no facts to support why this term should be implied from the parties' conduct. Instead, Plaintiffs make a conclusory allegation that the usual and customary fee for medical services should not exceed amounts Defendants charge "in-network" patients, but they do not allege facts as to how the parties came to this understanding. By contrast, in *Woodrum v. Integris Health, Inc.*, the district court denied a motion to dismiss the plaintiffs' breach of contract claim for excessive medical billing where the plaintiffs alleged that "as a condition of receiving care, they were required to sign form contracts which failed to specify or document the amount of charges." 2006 WL 8436429, at *3 (D. Okla.). Plaintiffs make no such allegations here; indeed, Plaintiffs state that "no documents discussing actual fees were proffered to Plaintiffs and the Class, and no reference

was made to Plaintiffs and the Class regarding obtaining a fee schedule." (Doc. 1-2) at 24. Accordingly, the Court cannot infer that an implied contract existed. *See Galarza v. Dick*, 2016 WL 10179245, at *4 (D.N.M.) (dismissing breach of implied contract claim because plaintiff's complaint did not allege what promises or representations were made, how they were communicated, what was promised in return, or how the promises created contract); *Lorens v. Catholic Health Care Partners*, 356 F.Supp.2d 827, 832-34 (N.D. Ohio 2005) (dismissing breach of implied contract claim for unfair billing practices because hospital's tax-exempt status did not create contract between hospital and patient); *Hill v. Sisters of St. Francis Health Servs., Inc.*, 2006 WL 3783415 (N.D. Ill.) (dismissing breach of implied contract claim based on allegations of unreasonable medical billing because plaintiff did not allege she was under any obligation to pay the bill); *see also Lefler v. United Healthcare of Utah, Inc.*, 72 Fed. Appx. 818, 825 (10th Cir. 2003) ("[I]t is impossible to compare other payor-provider negotiated rates because of the proprietary and confidential nature of such competitor agreements."). Therefore, the Court concludes Plaintiffs have not sufficiently plead a claim for breach of implied contract.

       *D.  Counts 3 and 4—Common Law Procedural and Substantive Unconscionability*

Plaintiffs' claim "Defendants' business practices described above are procedurally unconscionable. Defendants conduct their business by way of contracts of adhesion and engage in business practices intentionally designed to price gouge by billing Plaintiffs and the Class unreasonable and excessive fees for medical services." (Doc. 1-2) at 26. As to their substantive unconscionability claim, Plaintiffs state: "By both their business practices and by their business entity structure, Defendants price gouge by billing Plaintiffs and the Class unreasonable and excessive fees for medical services." *Id.* Defendants contend these claims fail because Plaintiffs

fail to allege facts showing Defendants' billing practices constitute contracts of adhesion or that any such contract was unfair. (Doc. 18) at 19-24.

Unconscionability is an equitable doctrine "which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova v. World Fin. Corp. of New Mexico*, 2009-NMSC-021, ¶ 21, 146 N.M. 256. Procedural unconscionability "is determined by examining the circumstances surrounding the contract formation, including the particular party's ability to understand the terms of the contact and the relative bargaining power of the parties." *Id.* ¶ 23. "Factors to be considered include the use of sharp practices or high pressure tactics and the relative education, sophistication or wealth of the parties, as well as the relative scarcity of the subject matter of the contract.'" *Id.* "Substantive unconscionability is concerned with contract terms that are illegal, contrary to public policy, or grossly unfair." *Id.* ¶ 22.

Plaintiffs' unconscionability claims are based on their allegation that Defendants subjected them to an adhesion contract. (Doc. 1-2) at 26. An adhesion contract is "a standard contract offered by a transacting party with superior bargaining strength to a weaker party on a take-it-or-leave-it basis, without opportunity for bargaining." *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 44, 150 N.M. 398. While Plaintiffs argue they were unfairly subjected to Defendants' billing practices because they had no choice as to what hospital they were brought to, Plaintiffs do not claim they were obligated to sign a contract prior to being treated. *Cf. Woodrum*, 2006 WL 8436429, at *3 (explaining plaintiff's breach of contract claim for excessive medical billing was properly based on allegation that plaintiff was required to sign form contracts "as a condition of receiving care"). Therefore, since Plaintiffs do not allege there

was a contract between Plaintiffs and Defendants, or that the parties reached any sort of agreement, Plaintiffs' unconscionability claims fail at the outset.

In addition, Plaintiffs' procedural unconscionability claim fails because Plaintiffs do not allege they were pressured into signing a contract or that they were unable to negotiate their bills with Defendants. While Plaintiffs make a general statement that they were "unable to pre-negotiate" the bills, they do not state they were unable to negotiate after they were billed or that they took any steps to do so. *See, e.g., THI of New Mexico at Hobbs Center, LLC v. Spradlin*, 893 F.Supp.2d 1172, 1185 (D.N.M. 2012) (dismissing procedural unconscionability claim because plaintiff failed to allege defendant "did not afford her an opportunity to negotiate, or that she attempted to negotiate and was rebuffed") (citation omitted); *Cowan v. D'Angelico*, 2010 WL 11493789, *6-7 (D.N.M.) (dismissing procedural unconscionability claims where plaintiffs did not allege high-pressure tactics or inability to negotiate).

Plaintiffs' substantive unconscionability claim also fails because Plaintiffs do not make any specific allegations about how the amounts they were charged were different than the rates charged to other patients. Plaintiffs make general statements about medical billing practices, such as that Defendants have charged some patients "rates 600% (six times) the government-set usual and customary rate" and that data from a "major insurance company indicates that similar Defendants charge on average 975% of Medicare for their services." (Doc. 1-2) at 9-10. However, Plaintiffs do not allege any facts regarding the services for which they were billed, what the usual and customary rates are for those services, or that they were actually charged more than any other patients. Plaintiffs also do not state whether they have medical insurance or whether their insurance company negotiated or paid any of their bills. New Mexico courts have explained that to state a claim for substantive unconscionability, a plaintiff must allege facts

11

from which the Court can infer that the "terms are patently unfair to the weaker party." *Rivera*, 2011-NMSC-033, ¶ 44; *see also State of New Mexico v. Garley*, 1991-NMSC-008, ¶ 30, 111 N.M. 383 (defining unconscionable contract terms as those "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other," and explaining unconscionability doctrine "intended to prevent oppression and unfair surprise, not relieve a party of a bad bargain"). Plaintiffs have not alleged facts from which the Court can reasonably infer they were charged more than any other patient. Accordingly, they have not stated a claim for substantive unconscionability. *See Christy Sports, LLC*, 555 F.3d at 1191 (explaining plaintiff's allegations "must be enough to raise a right to relief above the speculative level"); *see also Woodrum*, 2006 WL 8436429, at *3 (dismissing plaintiffs' bad faith claims because they "cite no authority in support of their allegation that applying a price differential to insured patients based on a group discount is evidence of bad faith much less gross recklessness or wanton negligence").

For the foregoing reasons, the Court finds Plaintiffs' unconscionability claims do not satisfy the Rule 12(b)(6) standard to state a claim for relief.

> E.  *Plaintiffs' Request to Amend Their Complaint*

In their response to Defendants' Motion to Dismiss, Plaintiffs ask for leave to amend their First Amended Complaint "to the extent this Court determines it is deficient under the 12(b)(6) standard." (Doc. 20) at 21. Defendants oppose this request because Plaintiffs "have not moved this Court for leave to amend the Complaint, submitted a proposed amendment, or even identified facts in their Response that they could introduce to cure the deficiencies in their Complaint." (Doc. 24) at 12.

Although Fed. R. Civ. P. 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires," this rule is not without limitations. *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 706 (10th Cir. 2014). Federal Rule of Civil Procedure 7(b)(1) "requires a request for relief to be made by a motion that (1) is in writing, (2) states with particularity the grounds for seeking the order, and (3) specifies the relief sought." *Id.* The Tenth Circuit recognizes the importance of Rule 7(b)(1) and has "held that normally a court need not grant leave to amend when a party fails to file a formal motion." *Id.* ("[A] bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based."); *see also Warnick v. Cooley*, 895 F.3d 746, 755 (10th Cir. 2018) ("A court may deny leave to amend … where a plaintiff fails to file a written motion and instead merely suggests she should be allowed to amend if the court concludes her pleadings are infirm.") (citation omitted). Here, Plaintiffs submitted only "a bare request to amend in response to a motion to dismiss," and did not submit a proposed amended complaint as required by Local Rule 15.1. *Albers*, 771 F.3d at 706; D.N.M. LR-Civ. 15.1 ("A proposed amendment to a pleading must accompany the motion to amend."). Therefore, without any argument or allegations upon which to determine whether to grant Plaintiffs' request to amend, the Court denies the request.

    III.    *Conclusion*

Based on the foregoing, the Court concludes all four of Plaintiffs' claims shall be dismissed for failure to state a claim under Rule 12(b)(6), and the Court denies Plaintiffs' request to amend their complaint. Therefore, the Court will dismiss Plaintiffs' claims with prejudice. *See Stan Lee Media, Inc.. v. Walt Disney Co.*, 774 F.3d 1292, 1299 (10th Cir. 2014) ("Dismissals

for failure to state a claim are presumptively with prejudice because they fully dispose of the case.").

      IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6), (Doc. 18), is granted, and Plaintiffs' claims are dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE