**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 23, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

BENJAMIN ARMIJO and OFELIA
RONQUILLO, on behalf of themselves
and all others similarly situated,

      Plaintiffs - Appellants,

v.

AFFILION, LLC; EMCARE, INC.;
EMCARE HOLDINGS, INC.; ENVISION
HEALTHCARE CORPORATION;
ENVISION HEALTHCARE HOLDINGS,
INC.,

      Defendants - Appellees.

No. 20-2086
(D.C. No. 2:19-CV-00750-KG-GJF)
(D. N.M.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **MATHESON**, **KELLY**, and **EID**, Circuit Judges.

_____

      Plaintiffs-Appellants Benjamin Armijo and Ofelia Ronquillo appeal from the

district court's dismissal of their putative class action complaint alleging negligence

and breach of contract by Defendants-Appellees, Affilion, LLC, EmCare, Inc.,

EmCare Holdings, Inc., Envision Healthcare Corporation, and Envision Healthcare

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Holdings, Inc. ("defendants").  Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

## Background

In July 2019, Mr. Armijo and Ms. Ronquillo brought their complaint alleging

that defendants billed them for unreasonable and excessive fees.  Plaintiffs received

medical services at Mountain View Regional Medical Center ("MVRMC").

MVRMC was not named as a defendant.  Instead, plaintiffs named entities they

contend are responsible for the billing.

Their complaint sounded in negligence and breach of contract.  The negligence

claim was premised on the theory that defendants were under a duty "to exercise

reasonable care in order to bill Plaintiffs and the Class only for reasonable, usual and

customary fees for medical services actually provided," and "to have procedures in

place to ascertain reasonable, usual and customary fees for medical services."  Aplt.

App. 26.  The contract claim was based on an alleged implied in fact contract under

the "mutual understanding that medical services would be provided for a usual and

customary fee," and that defendants later charged "exorbitant and unreasonable fees"

for those services.  Aplt. App. 27–28.  Plaintiffs also alleged that the implied

contracts are procedurally unconscionable (because they are contracts of adhesion)

and substantively unconscionable (because defendants charged unreasonable and

excessive fees for medical services).

After removal, defendants moved to dismiss the first amended complaint under

Fed. R. Civ. P. 12(b)(6).  The district court granted the motion, finding that plaintiffs

failed to allege a duty or injury sufficient to support a claim for negligence and failed

to plead sufficient facts giving rise to an implied contract.  Plaintiffs appeal from the

district court's order dismissing the complaint.

## Discussion

We review the district court's dismissal of a complaint under Rule 12(b)(6) de

novo, "accept[ing] as true all well-pleaded factual allegations" and viewing those

"allegations in the light most favorable to the plaintiff."  Scarlett v. Air Methods

Corp., 922 F.3d 1053, 1057–58 (10th Cir. 2019) (quotation omitted).  Because

plaintiffs' claims arise under state law, we must apply New Mexico law "with the

objective that the result obtained in [] federal court should be the result that would be

reached in" a New Mexico court.  Wood v. Eli Lilly & Co., 38 F.3d 510, 512 (10th

Cir. 1994).  We review the district court's state law determinations de novo.  Id.

### A.  Negligence Claim

Plaintiffs argue that they adequately stated a negligence claim.  They contend

that the district court erred in finding that they failed to allege that defendants owed

them a duty or that they suffered a cognizable injury.

Plaintiffs maintain that defendants owe them a duty of care because defendants

are involved in the provision of medical services.  Under New Mexico law, doctors

owe "a general duty to provide competent care in treating a patient's medical

condition" and to provide patients relevant medical information.  Provencio v.

Wenrich, 261 P.3d 1089, 1095 (N.M. 2011).  This duty is described in New Mexico

Uniform Jury Instruction 13-1101 as arising when a doctor is "treating, operating

3

upon, making a diagnosis of, or caring for" a patient.  <u>Salopek v. Friedman</u>, 308 P.3d 139, 144 (N.M. Ct. App. 2013) (quotation omitted).

Plaintiffs assert that, because defendants provided medical care, "[t]heir duty of care arises therefrom and extends to the billing for medical services."  Aplt. Br. at 27.  However, the complaint did not clearly allege that these defendants provided medical care.  It did not allege any connection between MVRMC and the entities sued, other than to state that Affilion "supplies medical services and providers, including emergency department physicians, to New Mexico hospitals and healthcare entities," with no mention of MVRMC.  Aplt. App. 13.  Plaintiffs assert for the first time on appeal that defendants "contracted with MVRMC to staff MVRMC's emergency room with physicians" and controlled the physicians that treated plaintiffs.  Aplt. Br. at 14, 27.  This allegation was not included in the complaint so plaintiffs cannot now rely on it as an allegation that defendants provided medical care.

Moreover, even had plaintiffs made such an allegation, they point to no authority suggesting that a doctor's duty to provide competent medical care requires entities that employ doctors to charge an unspecified reasonable fee.  Plaintiffs cite only a Texas appellate court case for the proposition that attorneys are subject to a "financial duty" not to charge excessive fees and argue that a similar duty should be imposed on doctors.  <u>See</u> <u>Braselton v. Nicolas & Morris</u>, 557 S.W.2d 187, 188 (Tex. Civ. App. 1977).  However, that case has little relevance to whether such a duty is owed by medical professionals under New Mexico law, particularly because the court

in <u>Braselton</u> found that the duty arose from the Texas Rules and Code of Professional Responsibility rather than an abstract "financial duty."  <u>See</u> <u>id.</u>

At oral argument, plaintiffs also suggested that their theory of duty finds support in the principles articulated by the New Mexico Supreme Court in <u>Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.</u>, 326 P.3d 465 (N.M. 2014).  Plaintiffs did not raise this theory below or on appeal, let alone argue for plain error.  At oral argument they did nothing more than suggest that the case supports their position, without offering substantive argument as to why.  Plaintiffs have therefore waived this alternative theory on appeal.  <u>See</u> <u>Dodd v. Richardson</u>, 614 F.3d 1185, 1208 (10th Cir. 2010).

Regardless, we doubt the case applies in these circumstances.  In <u>Rodriguez</u>, the New Mexico Supreme Court rejected a duty inquiry focused on foreseeability in favor of an approach that "require[s] courts to articulate specific policy reasons, unrelated to foreseeability considerations" in support of any finding that a defendant owes no duty.  <u>Id</u>.  The court further explained that the owners and occupiers of a building owe a duty of ordinary care that can be limited or defeated only by policy reasons.  <u>Id.</u> at 469.

Here, the district court did not consider or discuss foreseeability in concluding that plaintiffs failed to allege that defendants owed them a duty.  And while <u>Rodriguez</u> clearly adopts a broader concept of duty than that adopted by most states, subsequent cases applying its principles demonstrate that this concept is not unlimited.  For example, while <u>Rodriguez</u> recognized a broad duty to avoid injury to

5

another person or their property, New Mexico courts have recognized that the duty

"to avoid the negligent infliction of economic loss [is] notably narrower." Nat'l

Roofing, Inc. v. Alstate Steel, Inc., 366 P.3d 276, 278 (N.M. Ct. App. 2015) (quoting

Restatement (Third) of Torts: Liab. for Econ. Harm § 1 cmt. a (Am. L. Inst. 2020)).

More fundamentally, however, the existence of a broad concept of duty under

New Mexico law does not transform all perceived wrongs into negligence claims.

Plaintiffs do not actually allege that defendants were negligent, i.e., that their conduct

fell below the standard of care owed to plaintiffs thereby creating a foreseeable risk

of harm.  See Oakey, Estate of Lucero v. May Maple Pharmacy, Inc., 399 P.3d 939,

947 (N.M. Ct. App. 2017).  Rather, plaintiffs allege that defendants intentionally

billed them and others in their position at an unreasonable rate, causing them to pay

bills that they contend were too high and, in some cases, damaging their financial

stability and credit ratings.[1]  These allegations do not state a claim for negligence,

even under an expansive concept of duty.  Cf. Kabella v. Bouschelle, 672 P.2d 290,

293 (N.M. Ct. App. 1983) (distinguishing negligence from reckless and intentional

conduct and explaining that negligence involves "mere inadvert[e]nce").

**B.  Contractual Claims**

---

[1] Plaintiffs also contend that the district court erred in concluding that they failed to allege a cognizable injury.  Under New Mexico law, the "interest in one's economic stability is clearly an example of an interest that receives legal protection in a wide variety of contexts."  Lovelace Med. Ctr. v. Mendez, 805 P.2d 603, 611 (N.M. 1991).  While harm to plaintiffs' financial stability therefore likely constitutes a cognizable injury, their negligence claim fails because the complaint fails to allege that any harm suffered was caused by defendants' negligent conduct.  See id. at 609–10.

Plaintiffs next contend that the district court erred in dismissing their contractual claims.  The complaint neglected to specify whether plaintiffs alleged an implied in fact contract or an implied in law contract, but plaintiffs contend on appeal that they adequately pled claims under both theories.  They also contend that they adequately stated claims for procedural and substantive unconscionability.

    1.  <u>Implied in Fact Contract</u>

An implied in fact contract is based on an agreement that, although not stated expressly, can be inferred "from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."  <u>Hercules, Inc. v. United States</u>, 516 U.S. 417, 424 (1996).  The existence of an implied in fact contract depends on whether the parties' representations, custom, or conduct created a reasonable expectation of contractual rights.  <u>Orion Tech. Res., LLC v. Los Alamos Nat. Sec., LLC</u>, 287 P.3d 967, 971–72 (N.M. Ct. App. 2012).  The reasonableness of that expectation in turn depends on the extent to which the representations or conduct relied upon were "definite, specific, or explicit."  <u>Hartbarger v. Frank Paxton Co.</u>, 857 P.2d 776, 783 (N.M. 1993).  In order to state a claim for breach of an implied in fact contract, the complaint must allege facts concerning what promises were made to the plaintiff, how the promises were communicated, what the plaintiff promised in return, or how the promises created a contract.  <u>See</u> <u>Bissessur v. Ind. Univ. Bd. of Trs.</u>, 581 F.3d 599, 603–04 (7th Cir. 2009).

Plaintiffs contend that the parties' conduct, "i.e., seeking medical care, the provision of medical care, and the subsequent billing for said medical care" created

an implied in fact contract, i.e., defendants agreed to provide emergency medical

services in exchange "for the reasonable value of medical services provided."  Aplt.

Br. at 37.  However, the complaint contains no factual allegations regarding the

formation or terms of the contract to be implied from the parties' conduct.  Indeed,

plaintiffs did not plead any facts regarding (1) the intake procedures at MVRMC and

what representations, if any, were made during that process, or (2) the medical

services they received and the reasonable cost of those services.[2]  Plaintiffs remind us

that putative class members may have been incoherent or unconscious at the time the

contracts were allegedly formed, suggesting that contract formation also may be at

issue.  Accordingly, plaintiffs failed to carry their burden of alleging "enough factual

matter (taken as true) to suggest" that they are entitled to relief under an implied in

fact contract theory.  Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)

(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

---

[2] Plaintiffs did not specify what medical services they received until their opening brief on appeal.  They now identify the billing codes under which they were charged, but not the services associated with the codes.  Likewise, they now indicate what they contend is the reasonable fee for those services: the highest in-network amount defendants charge to major health insurance plans for the same services.  But it is far from clear that the amounts billed to those entities represent the reasonable value of the services.  As one court has explained, "there is no true market value for medical services" in the United States because third-party payers negotiate their own discounted rates from providers, which vary across insurers, providers, and geographies.  Melo v. Allstate Ins. Co., 800 F. Supp. 2d 596, 602 n.2 (D. Vt. 2011).  Hospitals must provide emergency care regardless of whether a patient can afford it, and those costs may be incorporated into the rates billed to other entities.  Id.  The discounted rate that an insurance company or government entity negotiates therefore "may bear as little relationship to the reasonable value of the medical services as the amount originally billed."  Id.

2.  <u>Implied in Law Contract</u>

Implied in law contracts, or quasi-contracts, are not based on the parties'

express or implied intention to agree to the performances in question, but rather are

"obligations created by law for reasons of justice." <u>Hydro Conduit Corp. v. Kemble</u>,

793 P.2d 855, 861 (N.M. 1990) (quotation omitted).  Claims brought under a quasi-

contract are essentially the same as claims for quantum meruit or unjust enrichment.

<u>Id.</u>

As an initial matter, defendants argue that we should not consider this claim

because plaintiffs failed to assert it below.  Indeed, the complaint alleged only that

defendants breached an implied promise to provide plaintiffs emergency medical

services in exchange for the reasonable or customary cost of those services.

Plaintiffs adhered to this position in responding to defendants' motion to dismiss.

Such allegations relate to an implied in fact contract.  <u>See</u> <u>Orion Tech. Res.</u>, 287 P.3d

at 971–72.  Plaintiffs' failure to assert a quasi-contract claim below precludes them

from raising the claim on appeal.  <u>See</u> <u>Richison v. Ernest Grp., Inc.</u>, 634 F.3d 1123,

1130 (10th Cir. 2011).

In any event, plaintiffs again fail to articulate a basis for quasi-contract.

Unlike implied in fact contracts, quasi-contracts are enforced to prevent unjust

enrichment when one party has received a benefit but no enforceable contract exists

between the parties.  <u>Hydro Conduit Corp.</u>, 793 P.3d at 860–61.  On appeal,

plaintiffs' quasi-contract theory is based solely on the alleged formation of an

9

implied contract under which plaintiffs would be obligated to pay only a reasonable price for the services they received.  These allegations do not support recovery.

3.  Unconscionability

Finally, plaintiffs contend that they adequately pled that the alleged contracts were unconscionable.  The equitable doctrine of unconscionability "allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party."  Cordova v. World Fin. Corp. of N.M., 208 P.3d 901, 907 (N.M. 2009).  In other words, unconscionability is an affirmative defense to enforcement of a contract, Dalton v. Santander Consumer USA, Inc., 385 P.3d 619, 621 (N.M. 2016), not a cause of action under which plaintiffs may recover from defendants.  Accordingly, the district court did not err in dismissing plaintiffs' unconscionability claims.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge